125 F.2d 104 (1942)
In re STERLING.
GOGGIN
v.
BOLSA CHICA OIL CORPORATION et al.
No. 9790.
Circuit Court of Appeals, Ninth Circuit.
January 13, 1942.
*105 Raphael Dechter and Joseph J. Rifkind, both of Los Angeles, Cal., for appellant.
Eugene Overton, Warren S. Pallette, Donald H. Ford, and Overton, Lyman & Plumb, all of Los Angeles, Cal., for appellees Bolsa Chica Oil, Simmons and Anderson.
Cree & Brooks and William H. Cree, all of Long Beach, Cal., Elizabeth R. Hensel, of Los Angeles, Cal., for appellees Cree, McVicar, Rood and McCallen.
Before DENMAN, MATHEWS, and STEPHENS, Circuit Judges.
MATHEWS, Circuit Judge.
This appeal is from an order of a court of bankruptcy[1] dismissing, for supposed lack of jurisdiction, a referee's certificate that appellees, Bolsa Chica Oil Corporation (hereafter called Bolsa Chica), M. M. McCallen Corporation (hereafter called McCallen), Thomas W. Simmons, Allen A. Anderson, H. H. McVicar, C. M. Rood and William H. Cree, had violated an injunction issued by the referee and hence were in contempt of court.
Jack Dave Sterling was adjudged a bankrupt on November 26, 1935, and his case was referred to a referee in bankruptcy. On January 6, 1936, Hubert F. Laugharn was appointed trustee of the bankrupt estate. *106 Subsequently, appellant, George T. Goggin, succeeded Laugharn as such trustee. The bankrupt estate included an oil well called the Huntington Shore well, which at all pertinent times was in possession of and operated by the trustee. Near the Huntington Shore well was a well called the Petroleum well, owned and operated by Bolsa Chica. Both wells were on lands of the State of California and were operated under easements granted by the State.
On April 18, 1940, the trustee filed with the referee a petition stating that Bolsa Chica had commenced redrilling the Petroleum well; that it would be impossible to redrill the Petroleum well without coming within 100 feet of the oil sands which were perforated by the Huntington Shore well and from which the Huntington Shore well obtained its production; and that such redrilling would cause an infiltration of mud and other foreign substances and thus cause irreparable damage to the Huntington Shore well. Thereupon the referee issued an order requiring Bolsa Chica to show cause why an order should not be entered to protect the Huntington Shore well from damage resulting from redrilling the Petroleum well. In response to the order to show cause, Bolsa Chica appeared specially and objected to the jurisdiction of the court. The referee announced that he would make no ruling until evidence was heard. Thereafter evidence was heard and, on May 15, 1940, the referee entered an order (1) overruling Bolsa Chica's objection and (2) enjoining Bolsa Chica from using mud as a circulating fluid[2] in redrilling the Petroleum well.
On August 22, 1940, the trustee filed a petition stating that appellees (Bolsa Chica, McCallen, Simmons, Anderson, McVicar, Rood and Cree)[3] had entered into "some agreement or arrangement * * * to circumvent, evade and escape the force and effect of" the injunction granted on May 15, 1940, and that redrilling of the Petroleum well had been or was about to be resumed, "with the use of mud as a circulating fluid in violation of said injunction." Thereupon the referee issued an order requiring appellees to show cause "why they and each of them should not be certified to the [court] for contempt for violating or aiding or abetting in the violation of the injunction." In response to this order, appellees appeared specially and objected to the jurisdiction of the court. The referee overruled the objection and, after hearing evidence, certified the facts to the judge. Facts thus certified were: "That [appellees] did at some time subsequent to August 1, 1940, enter into a conspiracy for the purpose of violating and circumventing * * * said injunction;" that each of the appellees "aided and abetted the violation and circumvention of said injunction;" that, disregarding said injunction, appellees "commenced the use of mud as a circulating fluid in the redrilling of [the Petroleum] well on August 22, 1940," and continued such use during "that entire night and through the following day;" and that said acts were done "with full knowledge of said injunction."
The certificate was filed on December 31, 1940. Thereafter the referee issued an order requiring appellees to appear before the judge on January 20, 1941, to show cause why they should not be adjudged in contempt. On January 9, 1941, appellees moved to dismiss the certificate on the ground that the court had no jurisdiction to grant the injunction and, consequently, no jurisdiction to adjudge appellees in contempt for its violation. The court granted the motion and, on February 7, 1941, entered an order dismissing the certificate. This appeal followed.
Appellees have moved (orally) to dismiss the appeal on the ground that the order appealed from was, in effect, a judgment of acquittal and hence not appealable. Actually, there was no acquittal nor even a trial of appellees. Instead, there was a refusal to try them. The motion to dismiss the appeal is denied.
Appellant's first specification is that the court erred in dismissing the contempt certificate. The dismissal was predicated upon a supposed lack of jurisdiction. That courts of bankruptcy have jurisdiction to punish contempts is clear.[4] It is equally clear that such courts have jurisdiction *107 to grant injunctions,[5] and that ordinarily the violation of such an injunction constitutes a contempt. Conceding all this, appellees contend that the injunction in this case was granted without jurisdiction, and that, therefore, the court had no jurisdiction to adjudge appellees in contempt for its violation.
No point is made of the fact that the court, in granting the injunction, acted by its referee and not by its judge. Appellees apparently recognize, as we do, that the referee, in granting the injunction, acted as the court, and was the court.[6] Appellees' contention is that the court itself  a district court of the United States sitting as a court of bankruptcy  had no jurisdiction to grant the injunction.
The question of the court's jurisdiction to grant the injunction was raised by Bolsa Chica at the first hearing before the referee and was determined adversely to Bolsa Chica's contention by the referee's order of May 15, 1940. No review of the referee's order was sought or obtained. The time within which such review might have been sought expired long before the contempt certificate was filed. As to Bolsa Chica, therefore, the referee's order was and is conclusive; for the principles of res judicata apply as well to jurisdictional questions as to other questions,[7] as well to bankruptcy cases as to other cases,[8] and as well to decisions of referees as to those of judges.[9]
The other appellees (McCallen, Simmons, Anderson, McVicar, Rood and Cree) were not parties to the proceeding in which the injunction was granted, but were parties to the contempt proceeding. In the contempt proceeding they (with Bolsa Chica) contended that the court had no jurisdiction to grant the injunction. They make the same contention here. The contention is based upon the assumption that the proceeding in which the injunction was granted was a controversy at law or in equity, as distinguished from proceedings under the Bankruptcy Act, between the trustee and an adverse claimant, concerning property acquired or claimed by the trustee.[10] Even accepting that assumption as correct, the court could take jurisdiction by consent of Bolsa Chica (sole defendant in the proceeding),[11] and Bolsa Chica alone could object to such jurisdiction. Not being defendants, the other appellees had, and have, no standing either to consent or to object.
We do not, however, accept appellees' assumption as correct. Bolsa Chica never made any adverse claim concerning property acquired or claimed by the trustee, but, if the trustee's allegations were true, was using its own property (the Petroleum well) in a way which, if continued, would have caused irreparable injury to property of the estate (the Huntington Shore well) in possession of the trustee. To prevent such injury, the trustee sought and obtained an injunction. Thus the controversy in which the injunction was granted was not a controversy between adverse claimants, but was a controversy in relation to the estate and clearly within the court's jurisdiction.[12]
Order reversed and case remanded for further proceedings in conformity with this opinion.
NOTES
[1] The District Court of the United States for the Southern District of California.
[2] It appears that, in redrilling an oil well, the driller pumps into the well, under hydraulic pressure, what is called a circulating fluid. This may be (1) crude oil or (2) mud.
[3] Simmons and Anderson were, respectively, Bolsa Chica's president and drilling superintendent. McVicar and Rood were, respectively, McCallen's president and secretary. Cree was attorney for McCallen, McVicar and Rood.
[4] Bankruptcy Act, § 2, sub. a, clauses (13), (15), (16), Id., 41, 11 U.S.C.A. § 11, sub. a, clauses (13), (15), (16), Id., § 69.
[5] Bankruptcy Act, § 2, sub. a, clause (15), 11 U.S.C.A. § 11, sub. a, clause (15).
[6] Bankruptcy Act, §§ 1(9), 38(6), 11 U. S.C.A. §§ 1(9), 66(6).
[7] Baldwin v. Iowa State Traveling Men's Ass'n, 283 U.S. 522, 524-526, 51 S.Ct. 517, 75 L.Ed. 1244; American Surety Co. v. Baldwin, 287 U.S. 156, 164-167, 53 S.Ct. 98, 77 L.Ed. 231, 86 A.L.R. 298; Treinies v. Sunshine Mining Co., 308 U.S. 66, 78, 60 S.Ct. 44, 84 L.Ed. 85; Sunshine Anthracite Coal Co. v. Adkins, 310 U.S. 381, 403, 60 S.Ct. 907, 84 L.Ed. 1263.
[8] Stoll v. Gottlieb, 305 U.S. 165, 170-172, 59 S.Ct. 134, 83 L.Ed. 104; Chicot County Drainage District v. Baxter State Bank, 308 U.S. 371, 377, 60 S.Ct. 317, 84 L.Ed. 229.
[9] Arizona Power Co. v. Smith, 9 Cir., 119 F.2d 888, 890.
[10] Bankruptcy Act, § 23, sub. a, 11 U. S.C.A. § 46, sub. a.
[11] Bankruptcy Act, § 23, sub. b, 11 U. S.C.A. § 46, sub. b.
[12] Bankruptcy Act, § 2, sub. a, clause (7), 11 U.S.C.A. § 11, sub. a, clause (7).