In the Matter of Paul Franklin
MILLER & Myrtle Bernice
Miller, Debtors.

Paul Franklin MILLER & Myrtle
Bernice Miller, Plaintiffs,

v.

Charles R. MAYER, General Electric
Credit Corporation, Defendants.

Bankruptcy No. 80–883–C(7).
Adv. No. 86–135.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Jan. 4, 1988.

Thomas Joel Chawk, Lakeland, Fla., for plaintiffs.

Peter N. Smith, Orlando, Fla., for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW and MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

This is a Chapter 7 case and the matter under consideration is a claim for relief filed by Paul F. Miller and his wife, Myrtle Bernice Miller (Debtors), the Plaintiffs who instituted this adversary proceeding. The Debtors seek a determination by this Court that the Defendants named in the adversary proceeding, Charles R. Mayer (Mayer) and General Electric Credit Corporation (GECC), violated the permanent injunction granted as part of the general discharge of the Debtors, imposed by Sec. 524(a)(2) of the Bankruptcy Code, therefore the Defendants Meyer and GECC should be held in contempt and punished accordingly. In their original complaint the Debtors sought an award of $10,000.00 as punitive damages and attorney fees. On June 24, 1986, this Court dismissed the original complaint without prejudice and granted the Debtors 15 days to file an amended complaint. The Debtors did file an amended complaint in which they basically restated their original claim and again sought the identical claim for relief set forth in their original complaint, i.e. punitive damages and attorney fees but not compensatory damages.

At the duly scheduled final evidentiary hearing, this Court heard testimony of witnesses, considered the pertinent part of the

record and based on the same now finds and concludes as follows:

On June 23, 1980, the Debtors filed their voluntary Petition for Relief under Chapter 7. On November 3, 1983, no one having objected to their to discharge, they received their general bankruptcy discharge. Approximately four years after the entry of the discharge, the Defendant Charles R. Mayer (Mayer), who is a practicing attorney in Lakeland, in order to clear up a title to a mobile home, attempted to contact the Debtors who at one time appeared to have had some interest in the mobile home. It appears that Mr. Mayer ostensibly was acting directly on behalf of GECC who had a lien or some interest in the mobile home in question, although it is evident that Mr. Mayer really acted on behalf of a friend of his, a real estate broker who had a contract for the sale of the mobile home, but who was having difficulty assuring delivery of a clear title to the prospective purchaser of the mobile home. It is without dispute that Mr. Mayer did ultimately locate the Debtors and contacted them and attempted to obtain from them their signature either for a release or for an affidavit of lost title certificate in order to enable him to obtain a new title for the mobile home in question so his friend, the real estate broker, could close the same and of course earn his commission on the sale. The number of contacts made by Mr. Mayer with the Debtors are in dispute. According to the Debtors, they were called and contacted by telephone by Mr. Mayer several times who indicated to them that unless they signed a release of any claim to the mobile home and executed the documents requested by Mr. Mayer, they would suffer dire consequences. When the Debtors informed Mr. Mayer that they had filed bankruptcy and obtained their discharge, Mr. Mayer is claimed to have stated that "he does not give a damn" concerning bankruptcy.

Be that as it may, it is without dispute that Mr. Mayer in fact located the Debtors and called them on an unlisted number and again requested that they complete the documents prepared by Mr. Mayer. It is further without dispute that Mr. Mayer, in the company of his bookkeeper, did personally visit the Debtors and again urged them to comply and sign the release forms or a certificate of a lost title, again without success. This Court is satisfied that it was made clear to the Debtors by Mr. Mayer that if they did not comply with his request, they would be sued and held liable to GECC for $34,000.00, the alleged unpaid balance on the original purchase contract. This is exactly what happened. Although Mr. Mayer knew that the Debtors filed their voluntary petition for bankruptcy and obtained a discharge notwithstanding he proceeded to file his first Complaint in the Circuit Court of the Tenth Judicial Circuit in and for Polk County, Florida, Case No. GC–G–85–1559. The Complaint filed by Mr. Mayer against the Debtors was entitled "Complaint to Foreclose Mortgage or in the Alternative, Petition for Appointment of Committee to Effect Title Transfers."

In Paragraph 6 of the original Complaint Mr. Mayer stated that "while he recognized that the Debtors had filed a voluntary petition and obtained a discharge, the debt due by the Millers to the Plaintiff are nondischargeable" (sic). Most notable, in the prayer for relief clause, Mr. Mayer sought on behalf of GECC an accounting to determine the amount due to GECC for principal and interest and a money judgment against the Debtors, for late charges, abstracting costs, taxes, and other expenses and costs, including attorney's fees. Mr. Mayer also stated in his prayer for relief that in the event the proceeds of the foreclosure sale of the mobile home were not sufficient to meet the outstanding obligation, GECC would seek a deficiency judgment against Plaintiffs for such amount as determined to be the deficiency. In Count II of the Complaint, the prayer for relief also sought a money judgment against the Debtors for attorney's fees and costs.

In due course, the Debtors, through their attorney, filed a Suggestion of Pendency of Bankruptcy in the Circuit Court which was promptly challenged by Mr. Mayer who filed a Motion to Strike the Suggestion. On December 4, 1985, the Circuit Court entered an Order denying the Motion to

Strike the Suggestion for Bankruptcy. In spite of the adverse ruling by the Circuit Court, Mr. Mayer proceeded to file an amended complaint against the Debtors on March 11, 1986. In his amended complaint, Mayer repeated his demand in Count 1 for an accounting and a determination of the amount due and owing by the Debtors to GECC, including interest charges, abstracting costs, taxes and expenses and costs including attorney's fees. Although this prayer for relief did not expressly demand an in personam money judgment against the Debtors and merely sought a judgment of foreclosure of the Debtors' interest in the mobile home, the same could be construed to include the in personam relief sought against the Debtors in the original complaint.

Based on the foregoing, the Debtors filed their complaint and sought a permanent injunction or, in the alternative, an order enforcing the permanent injunction provision of the general discharge prohibiting Mr. Mayer and GECC to pursue them any further and assert any claims against them. In addition the Debtors also sought an order holding the Defendants in contempt for violating the permanent injunction imposed by Sec. 524(a)(2) of the Bankruptcy Code and an order imposing punitive damages, including attorney fees and costs incurred by them in connection with the defense of the law suits filed against them by Mr. Mayer.

In opposing the claim of the Debtors, it is the position of Mr. Mayer that he merely intended to proceed in rem against the mobile home which was no longer the property of the estate; that he did not seek or attempt to collect a pre-petition debt from the Debtors which had been discharged in bankruptcy; and that he did nothing more than attempt to obtain an order compelling the Debtors to execute the documents needed to clear the title to the mobile home.

One would be less than candid not to concede that this record may possibly support facially the contention of Mr. Mayer that he merely sought to clear the title to the mobile home, and his ultimate goal was in fact to obtain either a replacement of a lost certificate of title or to foreclose all interest of the Debtors in the mobile home. It is equally clear, however, that he used impermissible tools to achieve his goal. Mr. Mayer is an attorney who is familiar with bankruptcy practice, having appeared before this Court several times over the years and who dealt with two elderly lay persons who at the time they were contacted by Mr. Mayer were not represented by counsel; that he used heavy-handed psychological pressures by threatening to subject them to personal liability on a pre-petition claim which they understood to have been discharged. Moreover, when Mr. Mayer was unable to obtain the documents he sought, he carried out his threat voiced to the Debtors and actually filed a lawsuit against them and in his original complaint alleged, inter alia, that the debt owed by the Debtors to GECC was a "nondischargeable" debt. There is hardly any doubt that this statement was patently incorrect and, in fact, was an outright falsity, made with full knowledge that the allegation was baseless and was neither supported by the facts of this case nor by applicable law governing dischargeability of debts, Sec. 523(a) et seq. Moreover, Mr. Mayer not only filed his original lawsuit and sought a money judgment on a pre-petition claim based on the alleged balance due and owing on the original contract by the Debtors to GECC but refiled his complaint even after his Motion to Strike the "Suggestion" was denied by the Circuit Court.

Based on the foregoing, there is hardly any doubt that Mr. Mayer, well knowing that the Debtors obtained their discharge, persisted to pursue the Debtors in a willful knowing violation of the permanent injunction imposed by § 524(a)(2) designed by Congress to protect Debtors from collection efforts by creditors of pre-petition debts which have been discharged. This leaves for consideration the most important and most troublesome aspect of the controversy under consideration, which is, what relief, if any, may be awarded to the Debtors by this Court.

There is nothing more basic and fundamental in a bankruptcy case of an individual than the protection afforded to a Debtor by the automatic stay imposed by Sec. 362 of the Bankruptcy Code against collection efforts of prepetition debts during the pendency of the case. *Notes of Committee on the Judiciary, Senate Report No. 95–989.* To effectuate the protection accorded by the automatic stay, Sec. 362(h) expressly authorizes an individual who is injured by a violation of the automatic stay to receive damages, costs, attorney fees, and under appropriate circumstances, punitive damages. *Budget Service Co. v. Better Homes of Virginia, Inc.,* 804 F.2d 289 (4th Cir. 1986) The protection afforded by the automatic stay, however, is only temporary and expires at the time the case is closed, Sec 362(c)(2)(A); at the time the case is dismissed, Sec. 362(c)(2)(B); or upon entry of the discharge, Sec. 362(c)(2)(C). It has been well established even prior to the amendment of the Bankruptcy Reform Act of 1978 that it is basic and fundamental that modern bankruptcy legislation was designed to grant the debtor a

> ... "new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt." *Local Loan Co. v. Hunt,* 292 US 234, 244–245, 54 S.Ct. 695, 699, 78 L.Ed. 1230, 1235, 93 ALR 195 (1934). *Lines v. Frederick,* 400 U.S. 18, 91 S.Ct. 113, 27 L.E.2d 124 (1970).

To effectuate the remedial purpose of the bankruptcy discharge, Congress enacted Sec. 524(a)(2).

Sec. 524(a)(2) replaces the automatic stay with a permanent injunction against the enforcement of all discharged debts upon entry of the discharge. Unfortunately this Section, unlike Sec. 362(h), fails to include a provision for sanctions if the permanent injunction is violated. Thus it is evident that there must be some mechanism to vindicate the rights of a discharged debtor in the event the debtor's rights are violated by a creditor who disobeyed and flaunted the permanent injunction imposed by the discharge granted to the debtor. It is well established that, ordinarily, one who willfully violates an injunction issued by a court of competent jurisdiction is held in contempt and punished accordingly. The difficulty to accept this proposition stems from the present uncertainty concerning the civil contempt power of the bankruptcy courts, uncertainty primarily resulting from the restructuring of the bankruptcy system by the Bankruptcy Amendments and Federal Judgeship Act of 1984 (Pub.L. No. 98–353), (BAFJA), enacted by Congress in 1984.

It has been suggested that generally it is unnecessary in order to protect a debtor to consider whether a non-Article III judge such as the bankruptcy judge has the power to hold one in contempt and punish for same, because a bankruptcy judge has, without doubt, the power to impose sanctions under a variety of circumstances and thus may accomplish the same end result. See *Budget Services, supra,* (sanctions for violation of § 362(h) of the Bankruptcy Code); *Gonzalez v. Parks,* 830 F.2d 1033 (9th Cir.1987) (sanctions for violation of Bankruptcy Rule 9011). In *Gonzalez,* the Ninth Circuit recognized that debtors filing bankruptcy petitions are subject to a requirement of good faith, and violations of that requirement can result in the imposition of sanctions. The Ninth Circuit in *Gonzalez* noted that Bankruptcy Rule 9011 granted a power to impose sanctions, which power has been approved by Congress when it permitted the Bankruptcy Rule to become law, the rules promulgated by the Supreme Court pursuant to 28 U.S.C.A. § 2075 (1982) (Congress' delegation of power to the Supreme Court to prescribe bankruptcy procedural rules), *citing In re 2218 Bluebird Ltd. Partnership,* 41 B.R. 540, 542–43 (Bankr.S.D.Calif.1984); and *In re Villareal,* 46 B.R. 284 (Bankr.C.D.Calif. 1984) (sanctions awarded because debtor's filing was "an abuse of the bankruptcy process"); Bankr.R. 9011. Thus it appears at first blush that the bankruptcy judge may proceed on a safer ground and so long as the punishment by a bankruptcy judge is labeled "sanctions" and not "punishment for contempt," no one's sensibility is offended. However, this Court is of the opinion that while this approach might be ap-

propriate when sanctions are to be imposed pursuant to a specific statutory authority granted by the Bankruptcy Code itself, i.e., Sec. 303(i) (sanctions in an involuntary case); Sec. 362(h) (sanctions for violation of the automatic stay); or sanctions imposed pursuant to Rules of procedure—B.R. 7016 (violation of pre-trial orders); B.R. 7037 (violation of discovery rules); and, B.R. 9011 (violation of the certification rule), none of these may be used as a basis to impose sanctions for violation of the permanent injunction imposed by Sec. 524(a)(2) of the Bankruptcy Code. Thus, it is clear that when the punishment is imposed on one for violation of a specific provision of the Code which does not expressly provide for sanctions it would not be intellectually honest not to call a spade a spade and admit that the violation of a permanent injunction issued by a court of competent jurisdiction is nothing else than what it is, i.e., contempt of court which is exactly what is involved in this adversary proceeding.

Its follows from the foregoing that the vindication of a debtor's rights granted by the discharge in a Chapter 7 case, protected by the permanent injunction imposed by § 524(a)(2), cannot be accomplished either by resorting to § 362(h) of the Bankruptcy Code or to any Bankruptcy Rule which specifically authorizes the imposition of sanctions for violation of the permanent injunction imposed by Sec. 524(a)(2) of the Bankruptcy Code. Thus, if a debtor is entitled to any relief, the same must be accorded by resorting to a contempt proceeding based either on the inherent power of the bankruptcy court and to sanction for civil contempt or by resorting to some other specific provision of the Bankruptcy Code or to a Bankruptcy Rule which might be utilized to accomplish the same result.

It should be noted at the outset that the defendants Mayer and GECC never raised the question of subject matter jurisdiction or challenged the Debtors' right to any of the relief sought from this Court. Although the parties did not contest jurisdiction, this Court must note the presence of jurisdiction on its own. *See Csibi v. Fustos,* 670 F.2d 134, 136 n. 3 (9th Cir.1982) (lack of subject matter jurisdiction in the lower court can be raised by the appellate court on its own motion for the first time on appeal). In light of the foregoing, it is clear that this Court is required to consider the question whether or not a bankruptcy court presided over by a non-Article III judge does or does not have the power to hold one in civil contempt, a question not very capable of an easy answer at this time.

### HISTORICAL BACKGROUND OF CONTEMPT POWER

The subject of contempt was expressly dealt with by the Bankruptcy Act of 1898 in Section 41 entitled "Contempts before Referees". Subclause (b) of this Section provided that any contempt committed before the referee had to be certified to a district judge, even though the Act of 1898 recognized that referees in bankruptcy were judicial officers and by virtue of the automatic reference of the Act granted by Section 22, all bankruptcy petitions were automatically referred to the referee in bankruptcy under Chapter I–VII, Chapter XI and Chapter XIII of the Act. Thus, it is without doubt that under the Act of 1898 or under the General Orders which governed practice and procedure under the Bankruptcy Act, the referee in bankruptcy had no power to find one guilty of contempt and punish one for being in contempt.

Pursuant to 28 U.S.C. 2075, Congress authorized the Supreme Court to promulgate rules governing bankruptcy procedure. The rules were to replace the General Orders which previously governed practice and procedure. In 1973 the Supreme Court, pursuant to its rule making power, approved the final draft prepared by the Advisory Committee on Bankruptcy Rules appointed by the Chief Justice and submitted the same to Congress as required by the enabling statute. 411 U.S. 989, 93 S.Ct. 3081, 37 L.Ed.2d xxxi (1973). Since Congress did not veto the Rules, they became effective October 1, 1973, and governed thereafter all practices and procedure in cases filed under Chapters I–VII, Chapter XI and Chapter XIII of the Bankruptcy Act

of 1898. These Rules which changed the title from "Referee in Bankruptcy" to the title, "Bankruptcy Judge", contained a new Rule which for the first time dealt directly with the subject of contempt committed in connection with a bankruptcy case referred to the judicial officer now called the bankruptcy judge. Rule 920, part of the newly promulgated Rules, expressly recognized the power of the bankruptcy judge to cite and punish for civil contempt, albeit, with the limitation that the fine imposed could not exceed $250.00 and that the bankruptcy judge had no power to order imprisonment of one found to be in contempt. According to the notes of the Advisory Committee accompanying this Rule, the Rule was merely a recognition of the inherent power of a court of competent jurisdiction to enforce its own orders and to punish for disobedience of a lawful order for contempt. *See Michaelson v. United States* ex rel. *Chicago, St. Paul, Minneapolis and Omaha Ry. Co.*, 266 U.S. 42, 65–66, 45 S.Ct. 18, 19–20, 69 L.Ed. 162 (1924). The note of the Committee accompanying the Rule further indicated that the courts of bankruptcy were included among those vested with such power, citing *Boyd v. Glucklich*, 116 F. 131, 135 (8th Cir.1902). Thus, it appears that neither did the Supreme Court, with the exception of the dissenting view of Justice Douglas, nor did Congress felt it necessary to have a specific statute to support the contempt power, albeit, of course, with the limitation stated and accepted the premise that it was part of an inherent power of a court to enforce its final binding orders through civil contempt.

The Bankruptcy Reform Act of 1978, Pub.L. No. 95–598; 92 Stat. 2549–2661 completely reconstructed the entire bankruptcy system but did not deal directly with this subject. As part of this far-reaching legislation, Congress enacted 28 U.S.C. § 1481 which granted to the newly reconstructed bankruptcy courts the powers of a court of equity, law, and admiralty. This Section had only an indirect reference to the bankruptcy court's power to punish for contempt and dealt with the subject only by way of limitation by providing that in spite of the extensive power granted by the Reform Act, a bankruptcy court was not authorized to punish for criminal contempt not committed in the presence of the bankruptcy judge or order imprisonment for contempt. Even a cursory reading of this Section indicates that it was not designed to be a grant of contempt power, but merely a limitation on the recognized inherent power of any court of competent jurisdiction to enforce its own order by contempt proceeding.

In order to accommodate the changes brought about by the Bankruptcy Act of 1978, the reconstituted Advisory Committee on Bankruptcy Rules appointed by the Chief Justice was charged with the duty to revise the existing Rules of practice and procedure which were in effect on the date of the enactment of the Reform Act. The Rules Committee, upon completing its task, transmitted its final draft for the Supreme Court's consideration in the fall of 1982, but before the Supreme Court handed down its decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) which invalidated the jurisdictional grant by the Bankruptcy Reform Act of 1978, 28 U.S.C. § 1471, et seq. To the surprise of many, the Supreme Court approved the final draft and transmitted the same for approval by Congress in 1983 after the *Northern Pipeline* decision which, as noted, invalidated the jurisdictional grant to the bankruptcy courts by the Bankruptcy Reform Act of 1978. Congress having failed to veto or change the Rules with some exceptions not material, the final draft became effective as of August 1, 1983, governing all practice and procedure of all cases filed under Title 11. Obviously, neither the Supreme Court nor Congress found any difficulty with the Rules, including with Bankruptcy Rule 9020, the Rule which dealt with the subject of contempt. This revised Rule, entitled "Criminal Contempt Proceeding", specifically provided for a summary disposition by a bankruptcy judge of criminal contempt committed in the presence of a bankruptcy judge, B.R. 9020(a)(1); in addition,

subclause (2) of this Rule authorized the bankruptcy judge to punish one for criminal contempt but only after notice and hearing when not committed in the presence of the judge; and only in subclause (3) required the certification of the facts to the district court in the event the punishment to be imposed was imprisonment which, of course, was not within the powers of a bankruptcy judge by virtue of a specific limitation on contempt power imposed by 28 U.S.C. § 1481.

The Bankruptcy Amendments and Federal Judgeship Act of 1984 (Pub.L. No. 98–353), (BAFJA) enacted by Congress in response to the Supreme Court's decision in *Northern Pipeline* did not deal with the subject of contempt at all for the obvious reason that all jurisdiction of cases filed under Title 11 and over all proceedings arising in, arising under or related to cases filed under Title 11 were vested initially in the district court. 28 U.S.C. § 1334. Under the BAFJA, bankruptcy courts are defined by Section 151 of Title 28 as the "units" of district courts presided over by bankruptcy judges in regular active service. They are authorized to exercise all jurisdiction initially granted to the district courts, but only if a district court granted a general reference pursuant to 28 U.S.C. § 157(a).

## POST–BAFJA TREATMENT OF CONTEMPT POWER OF BANKRUPTCY COURTS

From the change brought about by BAFJA, one might conclude that since there is no longer any specific reference dealing with the civil or criminal contempt power of a bankruptcy judge none exists. This is precisely the position adopted by the Ninth Circuit in the case of *Sequoia Auto Brokers, Ltd., Inc.*, 827 F.2d 1281 (9th Cir. 1987) In *Sequoia*, the Ninth Circuit concluded first that the inherent power to cite and punish one for contempt is reserved to judges appointed under Article III of the Constitution; second, unless there is a specific grant by Congress of contempt power, a non-Article III judge does not have the power to cite one and punish one for contempt. This Court is constrained to reject

not only the reasoning but the ultimate conclusions of the Ninth Circuit in *Sequoia*. In *Sequoia* Judge Wiggins, speaking for the Court, held first that since Congress has not expressly or impliedly conferred contempt power on bankruptcy courts, bankruptcy courts are powerless to determine and hold one in contempt or to issue a contempt order let alone punish, but must certify facts to the district court for a de novo review of the facts and for a determination whether to issue a contempt order and if one is issued, to punish an entity found to be in contempt. The *Sequoia* court based its conclusion first on the premise that only Article III courts have inherent contempt power, *citing Young v. U.S. ex rel Vuitton et Fils S.A.*, — U.S. ——, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987). This Court is unable to find any statement by the Supreme Court in *Young* to support the conclusion of the Court in *Sequoia*. What the Supreme Court stated in *Young* was nothing more than what it stated earlier in *Michaelson, supra*, to wit, the ability to penalize disobedience of a valid order entered by a court of competent jurisdiction is essential to ensuring that the judiciary has a means to vindicate its authority without complete dependence on other branches. There is no place in *Young* which states that this power is limited to Article III courts. *Young* spoke only of the inherent power of all courts to assure that lawful orders are obeyed. Thus it is fair to conclude that even non-Article III courts have the inherent power to enforce obedience of their lawful orders issued in connection with a proceeding over which such court had subject matter jurisdiction. The conclusions and the reasoning of the Ninth Circuit in *Sequoia*, as noted earlier, is not supported by either a historical treatment of the contempt power of bankruptcy judges either by the Bankruptcy Code itself or by any rule dealing with the subject of contempt, i.e. B.R. 920, B.R. 9020 (1983), or B.R. 9020 (1987).

The Supreme Court has unequivocally recognized an inherent power of courts to impose sanctions upon abusive litigation practices. *Link v. Wabash R.R.*,

370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962). Further, the Supreme Court also explicitly stated that judges "have inherent power to assess attorney's fees against counsel" for abuse of litigation practices. *Roadway Express v. Piper*, 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980). It is important to note that in neither *Link* nor *Roadway Express* did the Court interpret a limiting rule or statute as an indication of Congressional intent to limit a court's inherent power. Moreover, the Supreme Court in neither case restricted the inherent power of a court because of limiting inferences from statutory grants of authority. *See* Levin and Golash, *Alternative Dispute Resolution in Federal District Courts*, 29 U.Fla.L.Rev.1985, at 51–59. Thus, it is fair to conclude that all courts, whether created pursuant to Article I or Article III of the Constitution, do have inherent civil contempt power to enforce compliance with their lawful judicial orders, and no specific statute is required to invest a court with civil contempt power. This power is inherent in the authority to hear and determine legal disputes and it has been recognized at all times that the judicial power to issue an order carries with it the power to enforce the order. *United States v. Hudson and Goodwin*, 11 U.S. (7 Cranch) 32, 3 L.Ed. 259 (1812); *In re Debs*, 158 U.S. 564 (1895); *Francis v. People of Virgin Islands*, 11 F.2d 860 (3rd Cir.1926); *United States v. Talbot*, 133 F.Supp. 120 (D.Alaska 1955); *In re Jolly Joint, Inc.*, 23 B.R. 395 (Bankr.E.D.N.Y. 1982); 2 *Collier on Bankruptcy*, ¶ 105.03, at 105–7 (15th Ed.1985). These basic principles have been reaffirmed by the Supreme Court recently in the case of *Young, supra, citing Michaelson v. United States, supra.*

### STATUTORY AUTHORITY AS BASIS FOR CONTEMPT POWER

In addition the *Sequoia* court also reasoned that since there is no longer any specific statutory grant of civil contempt power granted to bankruptcy courts, none exists. In support of this proposition, the *Sequoia* court pointed out that since *Northern Pipeline, supra,* struck down the entire jurisdictional grant of the Bankruptcy Reform Act of 1978, 28 U.S.C. § 1471, *et seq.,* including Section 1481, the section which dealt with the subject of contempt indirectly, there is no longer any statutory basis which would authorize a non-article III court to exercise civil contempt power. The fallacy of this proposition should be evident even by a cursory reading of 28 U.S.C. § 1481. There is hardly any question that this Section did not grant contempt power at all, but was nothing more than a limitation on the recognized inherent contempt power of the bankruptcy courts providing that while the bankruptcy court has full and complete jurisdiction in law, equity and admiralty, it has no power to enjoin another court or to punish a criminal contempt not committed in the presence of the judge of the court or warranting punishment by imprisonment. Thus, the repeal of 28 U.S.C. § 1481 by BAFJA in 1984 is without significance and did not affect the inherent power of a bankruptcy court to cite and punish for civil contempt, the power long recognized over the past three quarter centuries of bankruptcy practice. See *Goggin v. Balsa Chica Oil Corp. (in re Sterling)*, 125 F.2d 104, (9th Cir.1942), and *Boyd v. Glucklich, supra.*

Even assuming for the sake of discussion that the bankruptcy courts do not have an inherent civil contempt power, it is clear that there is ample authority to exercise civil contempt power based on Sec. 105 of the Bankruptcy Code, albeit by implication. This section, in subclause (a), provides as follows:

§ 105. Power of court

(a) The Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title....

(b) ...

(c) The ability of any district judge or other officer ... of a district court to exercise any of the authority or responsibilities conferred upon the court under this title shall be determined by reference to the provisions relating to such judge, officer, or employee set forth in

title 28. This subsection shall not be interpreted to exclude bankruptcy judges and other officers or employees appointed pursuant to chapter 6 of title 28 from its operation.

Even a cursory reading of this section does, without doubt, grant the power to the bankruptcy judge to issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title. It cannot be gainsaid that the granting of a discharge to a debtor is one of the most fundamental and basic aspects of Title 11 and nothing could be more basic than a protection of the rights granted to a discharged debtor and the vindication of those rights in the event they are violated by ignoring the permanent injunction imposed by Sec. 524(a)(2).

It needs no elaborate discussion that the granting and denial of a discharge has been determined by Congress to be a "core" proceeding. 28 U.S.C. § 157(b)(2)(J). It is equally clear and this court is constrained to reject the view of *Sequoia* that enforcement of an order entered by a bankruptcy judge is no longer a "core" matter thus the power which existed earlier to enter an order in the "core" matter lost its "core" character once it became necessary to enforce the order. In the present instance this Court was granted power to exercise full jurisdiction in all "core" matters. *Matter of Wood*, 825 F.2d 90 (5th Cir.1987) and limited power in "non-core" matters. It cannot be gainsaid that in the case of a general reference the bankruptcy judge has the power to grant or deny discharge. 28 U.S.C. § 157(b)(2)(J) but is unable to protect the rights granted to a debtor by the discharge. Congress having considered that the granting or denial of a discharge is a pure "core" matter could not possibly have intended, as intimated by *Sequoia*, that the enforcement of the provisions of the discharge is a "non-core" matter and therefore cannot be handled by a bankruptcy judge and must be "certified" to the district court for disposition. Apart from the fact that there is no longer any provision in the Rules for certification of any matters to the district court except possibly pursuant to B.R. 5011 which deals with motions to withdraw the reference or motions to abstain from hearing proceeding and possibly pursuant to B.R. 9033 which deals with review of proposed findings of fact and conclusions of law in non-core proceedings. There is no longer any mechanism available to a debtor to bring the matter before the district court to obtain relief if his rights are violated by a creditor who attempted to collect a debt which has been discharged. It defies logic to conclude that the rights of a private litigant could be vindicated through imposition of sanctions under procedural rules, Bankruptcy Rules 7016 (violation of pre-trial orders), 7037 (violation of discovery rules) and 9011 (violation of certification rule), yet the rights of a discharged debtor cannot be protected by the very Bankruptcy Court which issued the discharge. Based on Sec. 105 it would be shee sophistry indeed to urge that a vindication of a debtor's right by an order entered by the bankruptcy court under a general reference is not necessary to carry out the provisions of Title 11. This Court is not unmindful that in *Sequoia*, the Ninth Circuit rejected the argument advanced by the government that Section 105 of the Bankruptcy Code furnished the statutory source of civil contempt power which may be exercised by bankruptcy courts. In doing so, the *Sequoia* court concluded that

> ... the broad general language of Section 105(a) is not a surrogate for the specific grants of limited contempt authority repealed by the 1984 Amendments. We find it doubtful that Congress would have vested the bankruptcy court, through section 105, with a broader power of contempt than that of the article III courts that refer and review the bankruptcy courts' decisions or that of other similarly situated article I courts. We cannot divine from the language of section 105 the limitations Congress would surely have placed on the contempt power of bankruptcy judges if it had intended to confer such power.

The conclusion of the Ninth Circuit that Sec. 105 grants broader power to the bankruptcy courts than the power possessed by

Article III courts finds not support either in the legislative history of this section or any authoratative decisions on this subject.

The validity of this conclusion obviously depends on the validity of the previously stated conclusion by the *Sequoia* court that 28 U.S.C. § 1481 was actually a grant of civil contempt power and not merely a limitation on the inherent power of the bankruptcy court, a proposition this Court is unwilling to accept.

### BANKRUPTCY RULE 9020—CONTEMPT PROCEEDINGS

Moreover, there is an additional support for the contempt power by a specific Rule adopted by the Supreme Court and approved by Congress, a Rule which became effective August 1, 1987, or two months after the Ninth Circuit heard arguments in *Sequoia*. B.R. 9020, as amended, now authorizes the bankruptcy judge to determine summarily a contempt committed in the presence of a bankruptcy judge, Bankruptcy Rule 9020(a). The Rule as revised further provides that a bankruptcy judge has the power to determine a contempt committed not in the presence of the bankruptcy judge in a case or proceeding pending before a bankruptcy judge but only after hearing on notice, Bankruptcy Rule 9020(b). It is to be noted that a previously existing provision in 9020 subclause (3) which dealt with certification to the district court was abolished in toto. The revised Rule further provides that the order of contempt entered by the bankruptcy judge is effective ten days after the service of the order and has the same force and effect as an order of contempt entered by the district court, unless within ten days the entity named in the order serves and files with the clerk timely objections to the determination by the bankruptcy judge, in which event the same is reviewed by the district court. It is odd indeed that the very same court which held in *Sequoia* that bankruptcy judges do not have the inherent or statutory contempt power also held after *Sequoia*, in *Gonzalez*, that they do have the power to impose sanctions on one who violated Bankruptcy Rule 9011. One cannot help but to conclude that the distinction is

one without difference simply not only because the end result is the same whether it is called a fine for contempt or an imposition of sanctions but also because the underlying premise supporting the result is the same. One is the violation of the permanent injunction included in the bankruptcy discharge issued by the bankruptcy court and the other is a violation of a rule governing procedure. If the imposition of sanctions for violating the procedural rule is proper, it is hardly understandable why a violation of a specific provision of the Bankruptcy Code cannot be sanctioned by a judicial officer who is granted full and complete jurisdiction to enforce the provisions of the Bankruptcy Code pursuant to the general reference granted by the district court based on 28 U.S.C. § 157(a). See *Budget Services Co.,* supra. While it is true that this new revised Rule 9020 does not use the term "punish", a sensible interpretation of the Rule would clearly suggest that the term "determine" would include the power to punish. Any other reading of the Rule may produce a totally absurd result for the simple reason that if the power of a bankruptcy judge would be limited to the determination would not include the power to punish, the entity found to be in contempt would never be punished unless the entity filed an objection within ten days to the determination. Since neither the Supreme Court nor Congress had any difficulty accepting this grant of civil contempt power by Rule 9020 and its predecessors as far back as 1973, it is reasonable to conclude that the revised Bankruptcy Rule 9020 furnishes more than ample authority for bankruptcy courts to exercise civil contempt power committed in a case or in a proceeding arising in, arising under, or related to a Title 11 case provided, of course, that the district court did enter an order of general reference pursuant to Section 157(a).

It would be ironic indeed and nothing more than an exercise in futility to grant a debtor a discharge, together with a permanent injunction prohibiting the pursuit of the debtor after discharge in an attempt to enforce discharged pre-petition debts, if the

very court which granted the discharge would be powerless to enforce an obedience of the order and permit violation of the permanent injunction with impunity. In *Sequoia*, the court stated the role of a bankruptcy court in a civil contempt proceeding is limited to certifying the facts to a district court for a de novo review. As noted earlier, a previously existing provision in 9020 subclause (3) which dealt with certification to the district court was abolished in toto by the revised B.R. 9020. Thus there is no longer a rule which would authorize the procedure suggested by the Ninth Circuit in *Sequoia*. Even assuming without admitting that a debtor whose rights are violated by a creditor may in some fashion bring the matter before a district court it would be contrary to the remedial spirit of the bankruptcy discharge so often emphasized by the bankruptcy court. *Lines v. Frederick, supra; Local Loan Co. v. Hunt, supra.* To compel the debtor to expend additional funds for representation before the district court when he can obtain speedy relief in the bankruptcy courts even though the case has been closed because it clearly could be reopened without the necessity of paying a filing fee pursuant to Sec. 350 of the Bankruptcy Code as imposed by B.R. 5010.

Based on the foregoing, this Court is satisfied that Mr. Mayer willfully and knowingly violated the permanent injunction imposed by the general bankruptcy discharge issued to the Debtors and therefore he is in serious contempt of this Court's order. This Court is further satisfied, however, that the Debtors have failed to present any evidence whatsoever as to the actual damages they have suffered as a result of the violation, neither proof of the expenses therein incurred in defense against the unwarranted illegal actions of Mr. Mayer, and for this reason, this Court is in a difficult position on this record to make a precise determination as to the appropriate sanctions to be imposed.

In light of the facts established by the record, this Court is satisfied that while the Plaintiffs are entitled to be compensated from Mr. Mayer for the costs incurred by them, including attorney's fees in conjunction with the defense of their rights granted by the general discharge, the matter shall be rescheduled for hearing in order to enable the Debtors to present evidence in support of their claim for relief against Mr. Mayer. However, there is nothing in this record which would warrant a conclusion that GECC did knowingly and willfully violate the permanent injunction even though it was named as nominal plaintiff in the complaints filed by Mr. Mayer ostensibly on behalf of GECC but in fact on behalf of his friend in order to assist him to complete the proposed sale of the trailer. For this reason the complaint against GECC should be dismissed with prejudice.

A separate and final order will be entered in accordance with the foregoing.