**In re Isaac & Aza BROWN, Raul P. Morales, Thresia A. Florence, Donna M. Groebe, Clint & Carolyn M. Jones, Eddie L. Loyd, Major & Hattie Roberson, Debtors.**

Bankruptcy Nos. 88 B 17914, 88 B 02217, 88 B 02218, 88 B 03051 and 88 B 03341–88 B 03343.

United States Bankruptcy Court, N.D. Illinois, E.D.

Oct. 18, 1988.

Thomas Holstein, Chicago, Ill., pro se.

Jack McCullough, Chicago, Ill., Chapter 13 Trustee.

Clifford Meacham, Office of the U.S. Trustee, Chicago, Ill.

Marc S. Shuger, Chicago, Ill., pro se.

Craig Phelps, Chicago, Ill., Chapter 13 Trustee.

RECOMMENDATIONS TO DISTRICT COURT FOR FINDINGS OF FACT AND CONCLUSIONS OF LAW IN PROCEEDING FOR POSSIBLE CRIMINAL CONTEMPT UNDER BANKRUPTCY RULE 9020

JACK B. SCHMETTERER,
Bankruptcy Judge.

On March 19, 1987 following hearing held, this Court recommended to the District Court that attorney Thomas Holstein be censured and given limited supervision from practicing under Chapter 13 of 11 U.S.C. On November 17, 1987, the District court accepted this Court's recommendation and entered an order of limited suspension of Mr. Holstein from such practice in Disciplinary Proceeding 87 D 17. He was banned from filing new Chapter 13 cases pending further review. On March 3, 1988, this Court acting for Chief Judge Schwartz who was absent from the District ordered the above-entitled case assigned here for limited purpose of holding hearing under Bankr.R. 9020 to determine whether Thomas Holstein acted in criminal contempt by filing new Chapter 13 cases before this Court in wilful violation of the said order of limited suspension, and whether attorney Marc S. Shuger had aided Mr. Holstein in doing so.

Pursuant to Bankr.R. 9020 and the District Court General Order of Reference of Bankruptcy matters entered July 20, 1984, this Court held such hearings on March 4th, 10th, and 11th, 1988, following notice to said attorneys, to the United States Trustee, and to the Standing Chapter 13 Trustees. The United States Trustee appeared and participated; the Standing Trustees appeared by their representatives.

Motions were filed and ruled on, evidence was taken, and the hearing concluded on March 11th. On the same day Mr. Holstein filed a post-trial Motion for Directed Verdict or in the Alternative for Directed Findings. On March 31, 1988 he filed his memorandum in support of that motion. The United States Trustee filed his brief ("Statement") with respect thereto on May 6, 1988.

For reference by the District Court Executive Committee, there are transmitted along with these Recommendations copies of the following referred to hereinbelow:

Tab No. 1 Recommendation of this Court—March 19, 1987

Tab No. 2 Order of Executive Committee in 87 D 17—November 17, 1987

Tab No. 3 Order and Notice of March 3, 1988 for hearing under Bankr.R. 9020

Tab No. 4 Hearing transcript—March 4, 1988

Tab No. 5 Hearing transcript—March 10, 1988

Tab No. 6 Hearing transcript—March 11, 1988

Tab No. 7 Respondents' "Complaint" filed before this Court to remove contempt proceeding to District Court in proceeding No. 87 D 17, treated by this Court as a motion

Tab No. 8 Respondents' Exhibit 1 admitted at hearing, showing transmittal of Executive Committee Order to Mr. Holstein on December 4, 1987

Tab No. 9 Respondents' Motion for Directed Verdict filed March 11, 1988

Tab No. 10 Supporting Memorandum filed by Messrs. Holstein and Shuger—March 31, 1988

Tab No. 11 "Statement" of U.S. Trustee filed May 6, 1988

Tab No. 12 Order of Bankruptcy Judge Erwin I. Katz entered March 21, 1988 in *In re Brown*, No. 87 B 17914

This Court's recommended Findings of Fact and Conclusions of Law follow. Pursuant thereto, this Court recommends that Respondents' motion for Directed Verdict on Constitutional and procedural grounds be denied, but that neither Mr. Holstein nor Mr. Shuger be found to have wilfully violated or wilfully aided the violation of the order entered with respect to Mr. Holstein

**529**

in Disciplinary Proceeding No. 87 D 17 on November 17, 1987.

### Recommended Findings of Fact

1. Following hearing held, on March 19, 1987, this Court found that attorney Thomas Holstein who is admitted to practice before the District Court failed to represent his clients competently in certain bankruptcy proceedings before this Court under Chapter 13 of Title 11 U.S.C., in violation of Canon 6 and DR 6–101(A)(3); and that he effectively withdrew from representing such clients without court permission in violation of DR 2–110. Therefore it was recommended that he be censured and given limited suspension from filing new Chapter 13 cases until he demonstrated that he had adequate staff and procedures so as to afford representation of counsel in court for his clients in those cases. Tab No. 1.

2. On November 17, 1987, the Executive Committee entered an order which was transmitted by the District Court Attorney Admissions Coordinator to all judges of the Bankruptcy Court. That order approved this Court's recommendation and provided in pertinent part:

"... that until further order of the Executive Committee the Clerk of this Court and the Clerk of the Bankruptcy Court are directed to accept no new filings by Thomas Holstein of any Chapter 13 cases...."

and

"... that 90 days from the date of this order the Chief Judge of the Bankruptcy Court is directed to survey the Bankruptcy Judges as to whether Thomas Holstein has demonstrated that he has satisfactorily represented his clients in his pending bankruptcy cases, and 30 days thereafter report his recommendation to the Executive Committee as to whether the ban on filing new Chapter 13 cases should be lifted."

Tab No. 2.

3. Certain Chapter 13 filings in cases set forth in the caption hereto were called to this Court's attention by the Clerk of this Court, the Standing Chapter 13 Trustees, and by an attorney who communicated concerning one case. From those filings it appeared that Mr. Holstein with help of Mr. Shuger might have violated the "ban on filing" new Chapter 13 cases imposed on him by the Executive Committee Order. Therefore in the absence from the District of the Chief Bankruptcy Judge and at his request and with his authority, this Court reassigned each of the above-entitled cases to this Court for the limited purpose of holding a contempt hearing pertaining to the foregoing. Notice was sent to Messrs. Holstein and Shuger, and also to the United States Trustee and the two Chapter 13 Standing Trustees. Pursuant to Bankr.R. 9020 and the District Court General Order of Reference as to bankruptcy matters entered July 10, 1984, attorneys Holstein and Shuger were on March 3, 1988 ordered to appear March 4, 1988 for hearing as to whether said attorneys or either of them acted in criminal contempt of the aforesaid order of November 17, 1987 in 87 D 17, and whether such new Chapter 13 filings should be referred to the attention of the Executive Committee. Tab No. 3.

4. The foregoing order was based on facts appearing from the face of Petitions filed in the following Chapter 13 bankruptcy proceedings in this District Bankruptcy Court, of which the Court takes judicial notice:

*In re Brown*, No. 87 B 17914, filed by attorney Holstein as sole attorney for Debtor on December 4, 1987, seventeen days after the Executive Committee Order;

*In re Morales*, No. 87 B 2217 (filed February 15, 1988); *In re Florence*, No. 88 B 2218 (filed February 16, 1988); *In re White*, No. 88 B 1719 (filed February 5, 1988); and *In re Jackson*, No. 88 B 1722 (filed February 5, 1988) all signed by Marc Shuger but naming Mr. Holstein as additional counsel for Debtor.

*In re D'Acensio*, No. 88 B 1720 (filed February 5, 1988); *In re Cubie*, No. 88 B 1721 (filed February 5, 1988); *In re Roberson*, No. 88 B 3343 (filed March 2, 1988); *In re Loyd*, No. 88 B 3342 (filed March 2, 1988); *In re Jones*, No. 88 B

3341 (filed March 2, 1988); and *In re Groebe*, No. 88 B 3051 (filed February 26, 1988) all signed by Mr. Shuger, but showing Mr. Holstein as "Trial Attorney" and/or "Referring Attorney" and/or attorney sharing fees, and all apparently produced with use of Mr. Holstein's software program for Chapter 13 cases and on his equipment.

5. On March 4, 1988, Mr. Holstein requested a continuance which was granted until March 11th. He also reported that he had not been served with or learned of the Executive Committee Order until December 4, 1988, when he learned of it from the Bankruptcy Clerk after filing the *Brown* case. (Tab No. 4, p. 9.) Mr. Shuger stated that he accepted the other cases as referrals from Mr. Holstein, disclosed therein the fee sharing arrangements, considered those filings his professional responsibility, and did not understand the Executive Committee Order to bar Holstein from referring cases to others. (Tab No. 4, pp. 12–13.)

6. At the hearing held March 11th and 12th, 1988, both Mr. Holstein and Mr. Shuger testified, and also the Bankruptcy Clerk Wayne Nelson was called by the Court as a witness. (Tab Nos. 5 and 6.) Respondent filed with this Court in open court what is termed a "Complaint" to remove this proceeding from the Bankruptcy Court to the District Court (Tab No. 7) but never to the knowledge of this Court moved the District Court to remove the proceeding from this Court. The "Complaint" was never to our knowledge docketed as a case or matter before the District Court. This Court accepted it as a form of motion before this Court. (Tab No. 5, p. 16.)

7. From the record of proceedings referred to hereinabove and the testimony of witnesses and Respondent's document admitted into evidence (Tab No. 8) this Court finds that the District Court Attorney Admissions Coordinator did on November 19, 1987 serve copies of the Executive Committee Order on the judges of the Bankruptcy Court (Tab No. 2) but not on Mr. Holstein. Nor did this Court or the Clerk of the Bankruptcy Court serve a copy on Mr. Holstein at that time. Since the order in question instructed our Bankruptcy Clerk Mr. Nelson and his staff not to accept new Chapter 13 filings from Mr. Holstein, Mr. Nelson issued appropriate instructions to his staff to implement the prohibition. However, the *Brown* case *supra* was by error in the course of filing many cases accepted from Mr. Holstein's office for filing on December 4, 1987.

Mr. Nelson communicated with Mr. Holstein's office on December 4th and that same day mailed a copy of the Executive Committee Order in question to Mr. Holstein's office. In no way did Mr. Nelson give any reason to Mr. Holstein's office person to whom he spoke to understand that Mr. Holstein was excused from the Executive Committee Order as to the *Brown* case. In fact, after learning of and receiving the Executive Committee Order on December 4, 1987, Mr. Holstein stopped filing new Chapter 13 cases on which he signed as attorney in charge. Instead, he referred his new Chapter 13 cases to Mr. Shuger. Thereafter, on the Chapter 13 filings signed and filed by Mr. Shuger, Mr. Holstein was disclosed as additional counsel, referring attorney, and/or attorney sharing fees and work, but Holstein did not sign as responsible attorney filing such cases.

8. Following conclusion of the evidence hearing before this Court, but before the post hearing briefing was completed by all concerned, Bankruptcy Judge Erwin Katz who presides over the *Brown* case *supra* held a hearing in that case pursuant to Bankr.R. 2017 and 11 U.S.C. § 329 as to payment of fees to Mr. Holstein and his continued representation of Debtors in that case. In his Order of March 21, 1988 (Tab No. 12) of which this Court takes judicial notice, Judge Katz found, as has this Court, that because the Executive Committee Order had not been delivered to Mr. Holstein prior to his filing the *Brown* case on December 4, 1987, his filing of the case that day was not in wilful violation of that order. On motion of Mr. Holstein, Judge Katz allowed him to withdraw his appearance and for substitution of Mr. Shuger as

attorney for Debtors in that case. No further fees were to be paid to Mr. Holstein in that case, and Judge Katz transmitted a copy of his order to this Court for inclusion in these recommended findings.

9. The thrust of the Executive Committee Order was to bar the Clerk of the Bankruptcy Court from accepting new Chapter 13 filings "by Mr. Holstein" and "ban" him from filing such cases for a period to be followed by review. Mr. Holstein did not wilfully violate that order by filing the *Brown* case because he did not know of the Executive Committee Order before he filed it. Within a reasonable period after learning of the Order, he obtained counsel to substitute for him in *Brown* and withdrew his appearance, thereby acknowledging his duty to comply with the Order. In the other cases inquired into by the Court, neither Mr. Holstein nor Mr. Shuger acted in wilful violation of the Executive Committee Order within the standards of law required for criminal contempt as set forth hereinbelow. They acted with lack of wisdom and foresight in failing to ask the Executive Committee to approve the reference by Holstein to Shuger of cases and filings that reflect Mr. Shuger as responsible signing attorney but also disclose Mr. Holstein as additional nonsigning counsel, referring counsel, "trial attorney", or as sharer of fees. However, under standards of law set forth below, such acts cannot be found to be wilful violations of the Executive Committee Order. This finding is in accord with the recommendations of the United States Trustee ("Statement", Tab No. 11) upon his review of the evidence.

### Recommended Conclusions of Law

■ 1. This Bankruptcy Court has jurisdiction over proceedings affecting the administration of cases and proceedings filed under the Bankruptcy Code, 28 U.S.C. § 157. The question of what attorney may file and appear in such cases, and the award of fees in those cases, affects the administration thereof. While the question of fee awards is within this Court's core jurisdiction (as it was within Judge Katz's core jurisdiction, Tab No. 12), the question

of whether an attorney was properly entitled to file a proceeding certainly affects administration of the case. When considered within a contempt hearing under Bankr.R. 9020 and the General Order of Reference of all bankruptcy matters to this Court, based on authority cited hereinbelow this Court has at least related jurisdiction to hold the hearing under that Rule and to make recommended Findings and Conclusions to the District Court to be considered under Bankr.R. 9033.

### Motion to Dismiss

2. The "Complaint" which Mr. Holstein filed herein was treated as a motion to dismiss the proceeding (Tab No. 7). It asserted a number of grounds. That pleading, treated only as a motion to dismiss the Rule 9020 contempt proceeding, was denied by this Court during the hearing. The grounds for that ruling must be considered as part of the Recommended Conclusions of Law. Some of those grounds were reargued in Respondent's brief supporting their post trial Motion for Directed Verdict.

■ 3. Respondents first argued that this Court was disqualified from presiding over the hearing under Bankruptcy Rule 9020(b) which provides in pertinent part for disqualification of a judge

"... [i]f the contempt charged involves disrespect to or criticism of a bankruptcy judge ..."

This hearing involved nothing of the kind. Mr. Holstein had the astonishing temerity to argue that this Court had

"... recommended certain sanctions against myself and laundering it through the Executive Committee of the District Court ..." (Tab No. 5, Tr. 3/10/88, pp. 20–21)

and therefore this Court was considering disrespect of its own order. This objection was frivolous as well as an impertinent reference to the District Court Executive Committee. By its terms, the sentence quoted above from Rule 9020(b) does not apply here because this hearing related to possible violation of the Executive Committee Order and possible disqualification of

Mr. Holstein to represent debtors in the new Chapter 13 cases, not to any disrespect to or criticism of this Court. At any event the duty of this Court under Rule 9020 in this situation is to certify proposed Findings and Conclusions for review under Bankr.R. 9033, not to adjudicate a criminal contempt. *In re Sasson Jeans, Inc.*, 80 B.R. 289 (Bankr.S.D.N.Y.1987). That procedure is particularly appropriate here since it is an Executive Committee Order which imposed the restrictions.

4. The "Complaint" for removal filed March 10, 1988 in open court and treated by this Court as a motion was asserted to request a stay of the hearing pending application to the District Court for Removal. (Tab No. 5, p. 25)[1] Since the Bankruptcy Court as a whole was charged by the Executive Committee Order in effect to monitor the Order and report back to the District Court, it was inappropriate to stay the hearing. This Court is unaware of any effort by respondent to seek removal of this proceeding by pleading before the District Court.

5. In support of the motion and argument of counsel that this Court was reviewing his own order, counsel cited *In re Murchison*, 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942 (1955), where it was held unconstitutional for a state judge to punish a criminal contempt for acts committed before him while he acted as a so called "one-man grand jury" under Michigan law, even if he conducted a full hearing thereon. Apart from the fact that there is no application here of any "one-man grand jury" statute, that authority does not apply here. The mere fact that the bankruptcy court may under Rule 9020 and did in this case initiate a criminal contempt hearing does not make *Murchison* applicable. In *Murchison* the state court judge adjudicated the criminal contempt. Under Bankruptcy Rule 9020, any order for contempt entered by the Bankruptcy Court stands unless objected to, but if objected to is considered by the District Court under Bankruptcy Rule 9033 following the procedure for review of Pro-

posed Findings and Conclusions in non-core matters. Indeed, the instant contempt hearing involved an order of the District Court, but affects administration of cases pending in this Court. It is therefore appropriate that this Court only enter recommended Findings and Conclusions under related jurisdiction for review by the Court that entered the pertinent order.

6. Counsel also argued under *Bishop v. State Bar of Texas*, 736 F.2d 292 (5th Cir. 1984) that they were entitled to confront any persons who had complained against them to determine whether those complaints were in good faith or based on competitive or other bad motives. This Court disclosed on the record the name of the only person other than the Clerk and Standing Trustees who had communicated on the subject. That attorney had written to Chief Judge Grady with a copy to this Court. (Tab No. 5, pp. 43–44). Respondents thereupon withdrew this issue on the record.

*Jurisdiction of Bankruptcy Court to Hold Contempt Hearing under Rule 9020*

 7. Respondents have questioned the authority of the Bankruptcy Court to hold any contempt hearings, notwithstanding Bankr.R. 9020 and the District Court general order of reference. This appears to be an issue of first impression in this District and Circuit.

Bankruptcy Rule 9020 provides:

*Contempt Proceedings*

(a) Contempt Committed in Presence of Bankruptcy Judge. Contempt committed in the presence of a bankruptcy judge may be determined summarily by a bankruptcy judge. The order of contempt shall recite the facts and shall be signed by the bankruptcy judge and entered of record.

(b) Other Contempt. Contempt committed in a case or proceeding pending before a bankruptcy judge, except when determined as provided in subdivision (a) of this rule, may be determined by the

---

1. The "Complaint" was headed with the names of Chapter 13 cases, but also showed the 87 D 17 number of the disciplinary proceeding. This Court struck that number and permitted the pleading to stand as a pleading in the matter before this Court.

bankruptcy judge only after a hearing on notice. The notice shall be in writing, shall state the essential facts constituting the contempt charged and describe the contempt as criminal or civil and shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense. The notice may be given on the court's own initiative or on application of the United States attorney or by an attorney appointed by the court for that purpose. If the contempt charged involves disrespect to or criticism of a bankruptcy judge that judge is disqualified from presiding at the hearing except with the consent of the person charged.

(c) Service and Effective Date of Order; Review. The clerk shall serve forthwith a copy of the order of contempt on the entity named therein. The order shall be effective 10 days after service of the order and shall have the same force and effect as an order of contempt entered by the district court unless, within the 10 day period, the entity named therein serves and files with the clerk objections prepared in the manner provided in Rule 9033(b). If timely objections are filed, the order shall be reviewed as provided in Rule 9033.

(d) Right to Jury Trial. Nothing in this rule shall be construed to impair the right to jury trial whenever it otherwise exists.

Amended Mar. 30, 1987, eff. Aug. 1, 1987.

8. There is a split of authority as to whether a Bankruptcy Court has contempt authority. The following cases are among those which uphold a bankruptcy court's contempt power: *Kellogg v. Chester,* 71 B.R. 36 (N.D.Tex.1987); *In re Better Homes of Virginia, Inc.,* 52 B.R. 426 (E.D. Va.1985), *aff'd on other grounds,* 804 F.2d 289 (4th Cir.1986); *In re Silver,* 46 B.R. 772 (D.Colo.1985); *In re Haddad,* 68 B.R. 944 (Bankr.D.Mass.1987); *In re Moyer,* 51 B.R. 302 (Bankr.D.Utah 1985); *In re Johns–Manville Corp.,* 26 B.R. 919 (Bankr. S.D.N.Y.1983). *Accord Matter of Miller (Miller v. Mayer),* 81 B.R. 669 (Bankr.M.D. Fla.1988); *In re L.H. & A. Realty,* 62 B.R. 910 (Bankr.D.Vt.1986).

9. Those courts which uphold a bankruptcy court's contempt power base their decision on one or more of the following grounds:

a. Under 11 U.S.C. § 105 (especially § 105(a), second sentence, as amended as of August 1, 1987);

b. That a contempt proceeding is a core proceeding under 28 U.S.C. § 157(b)(2).

c. That such an exercise of power is consistent with the bankruptcy court's other powers, namely:

(1) 11 U.S.C. § 362(h).

(2) Issuance of injunctions.

(3) Enforcement of settlements.

(4) Bankruptcy Rule 9011(A).

(5) Bankruptcy Rule 7037.

(6) Sanctions for abuse of process.

(7) 11 U.S.C. § 303(i).

(8) 11 U.S.C. § 523(d).

10. An exercise of contempt power is certainly consistent with Congress' goals of speed and efficiency which underlie the enactment of the Code and the Bankruptcy Court system. It is also consistent with *Marathon* and other recent Supreme Court cases:

(1) *Thomas v. Union Carbide Agricultural Products Co.,* 473 U.S. 568, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985) (Court found that Article III did not prohibit Congress from imposing a system of binding arbitration with only limited review by the Article III judiciary).

(2) *Commodity Futures Trading Commission v. Schor,* 478 U.S. 833, 106 S.Ct. 3245, 92 L.Ed.2d 675 (1986) (Court balanced the values of Article III against competing constitutional values and legislative responsibility).

11. The following cases are among those which hold that the bankruptcy court does not have contempt power: *In re Sequoia Auto Brokers, Ltd.,* 827 F.2d 1281 (9th Cir.1987); *In re Powe,* 75 B.R. 387 (Bankr. M.D.Fla.1987); *In re Continental Air Lines, Inc.,* 61 B.R. 758 (S.D.Tex.1986); *In re Omega Equipment Corp.,* 51 B.R. 569 (D.D.C.1985).

12. The Courts which deny a bankruptcy court's contempt power base their decisions on one or more of the following grounds:

 a. Contempt is not within the Constitutional grant of power to Article I judges, and the power is unique to Article III judges.

 b. A contempt proceeding is not a core proceeding.

 c. When Congress passed the 1984 amendments it deleted any statutory authority for the bankruptcy court to exercise contempt power.

 d. Bankruptcy Rule 9020 is inadequate authority for the exercise of contempt power because it is expressly based on sections of the Bankruptcy Code which were expressly repealed by the 1984 amendments.

13. Much authority holds that the bankruptcy court may not enter criminal contempt orders. *In re Sequoia Auto Brokers Ltd.*, 827 F.2d 1281 (9th Cir.1987); *In re Better Homes of Virginia Inc.*, 52 B.R. 426 (E.D.Va.1985) *aff'd on other grounds*, 804 F.2d 289 (4th Cir.1986); and *In re Industrial Tool Distributors, Inc.*, 55 B.R. 746 (N.D.Ga.1985).

14. The purpose of a civil contempt penalty is to compensate for violation of a court order, and/or coerce one into compliance with, a court order. The purpose of a criminal contempt penalty is punitive, or to uphold a court's authority. *See Hubbard v. Fleet Mortgage Co.*, 810 F.2d 778 (8th Cir.1987); *Latrobe Steel Co. v. United Steelworkers of America, AFL–CIO, et al.*, 545 F.2d 1336 (3rd Cir.1976); *Lewis v. S. S. Baune*, 534 F.2d 1115 (5th Cir.1976), *reh'g denied*, 545 F.2d 1299 (1977); *In re Powe*, 75 B.R. 387 (Bankr.M.D.Fla.1987). In this case, therefore, the hearing was one for criminal contempt. The possible result if contempt were found would be to punish respondents for asserted wilful disobedience of the Executive Committee Order, not to win some remedial order designed to compensate for violation or coerce compliance. A final order of criminal contempt may be beyond the power of this Court. *In re Magwood (Hicks v. Pearlstein)*, 785 F.2d

1077, 1078 (D.C.Cir.1986). However the procedure of Rule 9020 makes the Bankruptcy Court contempt order final only if the respondent does not object to it; otherwise it is a recommendation to the District Court. A contempt proceeding found to be within the related jurisdiction of the Bankruptcy Court under 28 U.S.C. § 157 is one that the Court "may hear" but not decide. *United States v. Revie*, 834 F.2d 1198, 1206 (5th Cir.1987), *cert. denied*, — U.S. —, 108 S.Ct. 2845, 101 L.Ed.2d 882 (1988). That is precisely what Bankruptcy Rules 9020 and 9033 contemplate following the hearing procedure required under Rule 9020.

15. The Fifth Circuit has recently held in a case arising before Rule 9020 was adopted that the bankruptcy court properly held a fact hearing on his show-cause order as predicate to criminal contempt adjudication later issued by the District Court. *United States v. Revie*, 834 F.2d 1198 (5th Cir.1987). That is the same procedure followed here.

16. The Ninth Circuit Court of Appeals concluded that bankruptcy judges lack any contempt authority at all. *See In re Sequoia Auto Brokers, Ltd.*, 827 F.2d 1281 (9th Cir.1987). However, this Court is not bound by and cannot agree with the reasoning and conclusion of the Ninth Circuit set forth in *Sequoia*, and adopts the authoritative and better reasoned opinion in *Matter of Miller (Miller v. Mayer)*, 81 B.R. 669 (Bankr.M.D.Fla.1988) which rejected *Sequoia*. *Miller* was followed by the District Court in *Haile v. New York State Higher Education Services Corp.*, 90 B.R. 51 (W.D.N.Y.1988) which found the Bankruptcy Court to have core authority to dispose of contempt matters under 11 U.S.C. § 105(a) and 28 U.S.C. § 157.

17. The court in *Miller* correctly found several flaws in the reasoning of *Sequoia*. First, the Ninth Circuit cited *Young v. United States ex. rel. Vuitton et Fils S.A.*, 481 U.S. 787, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987) for the proposition that only Article III judges possess inherent contempt power. Nowhere in *Young* does it state that such power is limited to Article III courts.

Second, the Bankruptcy Court is granted power to exercise full jurisdiction in all core matters and more limited authority in related matters, *Matter of Wood*, 825 F.2d 90 (5th Cir.1987); *Miller*, 81 B.R. at 677. Contempt will often involve core issues, and will likely meet the test of related jurisdiction.

Third, *Sequoia* gave little weight to Bankruptcy Rule 9020, except for a scant mention in a footnote, although that Rule became effective on August 1, 1987, two months after the Ninth Circuit heard arguments in *Sequoia*. Last, *Sequoia* ignores the legislative, historical rationale for the contempt power of bankruptcy judges. *Miller* sets forth a complete discussion of those points. Accordingly, this Court recommends that our District Court decline to follow the Ninth Circuit opinion and that it find bankruptcy judges to have authority (1) to issue civil contempt findings and orders within the core jurisdiction of this court; (2) to hold criminal contempt hearings under the procedures of Bankr.Rule 9020 and issue orders which become final only if respondent does not object thereto, and if objected to are treated under Bankruptcy Rule 9033 the same as any orders issued under related jurisdiction. In this case, it is therefore recommended that this Court be found to have related jurisdiction to hold the hearing for reasons unique to the facts presented here (review of possible contempt of the Executive Committee Order and related jurisdiction to determine whether counsel filing cases were qualified to do so).

*Standards of Criminal Contempt*

■ 18. In order to convict one of criminal contempt for disobedience of a court order, it must be established beyond a reasonable doubt that the alleged contemnor had notice of a specific order and wilfully disobeyed the order. *United States v. Rylander*, 714 F.2d 996 (9th Cir.1983), *cert. denied*, 467 U.S. 1209, 104 S.Ct. 2398, 81 L.Ed.2d 355 (1984); *In re Rumaker*, 646 F.2d 870, 872 (5th Cir.1980); *In re Weeks*, 570 F.2d 244, 245 n. 1 (8th Cir.1978). *United States v. Revie*, 834 F.2d 1198 (5th Cir. 1987).

■ 19. The critical features for distinguishing civil from criminal contempt are the substance of the proceeding and the character of the relief sought. "If it is for civil contempt the punishment is remedial, and for the benefit of the complainant. But if it is for criminal contempt the sentence is punitive, to vindicate the authority of the court." *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 441, 31 S.Ct. 492, 498, 55 L.Ed. 797 (1911).

This form of analysis has been repeated and applied in a bankruptcy context:

> "It is not the fact of punishment, but rather its character and purpose, that often serve to distinguish between the two classes of cases. If it is for civil contempt, the punishment is remedial, and for the benefit of the complainant. But if it is for criminal contempt the sentence is punitive, to vindicate the authority of the court." *In re Bennett*, 41 B.R. 958, 960 (E.D.Wis.1984).

■ 20. The vindication purpose makes criminal contempt prosecution collateral to a bankruptcy case. Although, in dicta, criminal contempt has been described as not a core matter, *In re Better Homes of Virginia, Inc.*, 52 B.R. 426, 430 (E.D.Va. 1985), *aff'd on other grounds*, 804 F.2d 289 (4th Cir.1986), this discussion predated the amended Bankruptcy Rules, which themselves provide for both direct criminal contempt proceedings and a procedure to certify indirect criminal contempt. Where there is an indirect criminal contempt, the Bankruptcy Court must certify the findings of facts to the district court. *Hubbard v. Fleet Mortgage Co.*, 810 F.2d 778, 780 (8th Cir.1987); *In re Sasson Jeans, Inc.*, 80 B.R. 289 (Bankr.S.D.N.Y.1987).

■ 21. A defendant will be held in criminal contempt for not complying with an appropriate, clear order, where the noncompliance is found, beyond a reasonable doubt, to have been wilful. *Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 782 (9th Cir.1983). Wilfulness in contempt cases is defined as "a deliberate or intended violation, as distinguished from an accidental, inadvertent, or negligent viola-

tion of an order," *Falstaff Brewing Corp. v. Miller Brewing Co., supra.*

22. Criminal contempt requires both a contemptuous act and an intent to commit the contempt. *In re Farquhar,* 492 F.2d 561, 564 (D.C.Cir.1973). The intent requirement is satisfied when a volitional act is done by one who knows or reasonably should be aware his conduct is wrongful. *U.S. v. Seale,* 461 F.2d 345, 368 (7th Cir.1972). Where the relief ordered is marked by imposition of an unconditional sentence or fine, e.g. a determinant sanction without provision for purge, the contempt is criminal. *Shillitani v. United States,* 384 U.S. 364, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966); *Hicks v. Feiock,* —— U.S. ——, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988).

23. Criminal penalties may not be imposed upon someone who has not been afforded the protections that the Constitution guarantees to criminal proceedings, including the requirement that the offense be established beyond a reasonable doubt. *See e.g. Gompers v. Buck's Stove and Range Co.,* 221 U.S. 418, 444, 31 S.Ct. 492, 499, 55 L.Ed. 797 (1911); *Michaelson v. United States Ex Rel. Chicago, St.P. M. & O. R. Co.,* 266 U.S. 42, 66, 45 S.Ct. 18, 20, 69 L.Ed. 162 (1924). Where the contempt can be classified as a petty offense, however, certain constitutional protections (e.g. right to a jury trial) may not be available. *Bloom v. Illinois,* 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968).

24. Civil contempts are generally marked by a design to compel the doing of some act, and those imprisoned need "carry the keys of their prison in their own pockets." *Penfield Co. v. S.E.C.,* 330 U.S. 585, 67 S.Ct. 918, 91 L.Ed. 1117 (1947). The punishment is remedial. Civil contempt is generally designed to benefit an aggrieved party, and the punishment is designed to force compliance with an order or decree or to cause the contemnor to pay what are in effect damages to the party injured by the noncompliance. The dispute is not truly between the court and the contemnor.

25. Accordingly, this Court properly proceeded here by way of notice under Bankruptcy Rule 9020 for hearing as to possible criminal rather than civil contempt.

26. Based on the fact findings hereinabove, it cannot be said that Mr. Holstein knew of the Executive Committee Order before he filed the *Brown* case or that he wilfully violated the order. Nor can it be found that he wilfully violated the order after he learned of the order in the light of his withdrawal from *Brown* within a reasonable time necessary to obtain replacement counsel. Nor, in the light of the wording of the order which banned new Chapter 13 filings by Mr. Holstein can it be found that either he or Mr. Shuger wilfully violated the Executive Committee Order by the filing of new Chapter 13 cases referred by Mr. Holstein to Mr. Shuger, even those in which Mr. Holstein is referred to as additional counsel (but not signing or filing counsel), referral counsel, trial counsel, and sharer of fees. None of the latter relationships were expressly prohibited. It would have been much wiser for the two counsel to have sought instructions from the Executive Committee before embarking on this course, but it cannot be said that either of them wilfully violated any terms of the Executive Committee Order by this pattern of filings and therefore they are not in criminal contempt.

27. This Court followed correct, lawful, and constitutional procedure within its authority. Respondents' motion for directed findings based on constitutional and procedural grounds should be denied. However on the factual merits Respondents are entitled to judgment that they were not in criminal contempt of the Executive Committee Order.

## CONCLUSION

Wherefore this Court recommends that its Recommended Findings and Conclusions be adopted by this District Court, that Respondents' motion for directed findings based on constitutional and procedural grounds be denied, and that Messrs. Holstein and Shuger be found not to have wilfully violated the Executive Committee's

Order and therefore are not in contempt thereof.