**In re MAXAIR AIRCRAFT CORP. OF GEORGIA, INC., Debtor.**

**COMMERCIAL BANKING COMPANY, Movant,**

**v.**

**Donald E. JONES, et al., Respondents.**

**Civ. A. No. 92–24–VAL.**

**Bankruptcy No. 91–70507–VAL.**

United States District Court, M.D. Georgia, Valdosta Division.

Dec. 7, 1992.

Joel S. Treuhaft, Tampa, FL, for appellant.

David Martin Wolfson, Valdosta, GA, for appellee.

## ORDER

OWENS, Chief District Judge.

Pursuant to Rule 9020 of the Bankruptcy Rules, respondents Donald E. Jones and Maxair Aircraft Corp. of Georgia, Inc., have filed objections to an order of the Bankruptcy Court of the Middle District of Georgia in which the court found respondents in contempt of court. Under Rules 9020 and 9033, this court is to make a de novo review upon the record of the Bankruptcy Court's findings of fact and conclusions of law in this matter and accept, reject, or modify these findings or recommit the matter to the bankruptcy court with instructions. The following findings of fact and conclusions of law are based upon this court's de novo review of the record in this case.

## FACTS

On August 21, 1991, Maxair Aircraft Corp. of Georgia, Inc. ("MaxAir"), filed a voluntary bankruptcy petition under Chapter 11 in the United States Bankruptcy Court for the Middle District of Georgia. MaxAir, a manufacturer of ultra light aircraft and parts, was originally formed by respondent Donald E. Jones and James Allred, who has since left the company. Jones has been MaxAir's chief operating officer since MaxAir filed under Chapter 11.

Commercial Banking Co. ("CBC") is a secured creditor of MaxAir with a first priority security interest in MaxAir's inventory, accounts receivable, and certain machinery and equipment. This security interest specifically includes equipment and inventory at the MaxAir premises in Valdosta, Georgia.

On September 17, 1991, MaxAir and CBC entered into a consent order concerning MaxAir's use of cash collateral. Under this order, MaxAir was permitted to use CBC's cash collateral on equipment inventory and accounts receivable so long as MaxAir complied with certain conditions. First, MaxAir was to furnish weekly accountings to CBC, and these weekly accountings were to show proof of any replacement of inventory. In addition, CBC and its agents were granted "the right to inspect and audit all records and inventory" of MaxAir at any time during normal business hours. Order on Debtor's Use of Proceeds, ¶ 10.

On November 12, 1991, the bankruptcy court entered an order prohibiting MaxAir from any further use of collateral. CBC then filed a motion for relief from the automatic stay, and this motion was scheduled for a hearing on November 27, 1991. Two days prior to the scheduled hearing, on November 25, 1991, a CBC officer contacted MaxAir to request an inspection of the collateral as permitted in the consent order. Jones emphatically refused to allow any inspection.

On November 27, 1991, the bankruptcy court lifted the automatic stay, and CBC obtained an order for writ of possession of the collateral from the State Court of Lowndes County that same day. Officers of CBC immediately attempted to enforce this order at MaxAir, but discovered that substantially all of the machinery and equipment constituting the collateral had been removed from the premises.

On December 5, 1991, CBC filed a motion requesting that MaxAir and Jones be held in contempt of court and sanctioned such that they could purge themselves of the contempt upon the return of the subject collateral. The bankruptcy court scheduled a hearing for this motion on December 12, 1991. CBC's counsel sent notice of this hearing to Jones' counsel on December 5.

Due to an illness, Jones' counsel could not attend the hearing on December 12, 1991, and local counsel was obtained to represent Jones at the last minute. The bankruptcy court heard some testimony; however, due to the illness of Jones' counsel, the court continued the hearing. In addition, the court entered an order on December 12, 1991, requiring MaxAir and Jones to provide an accounting to the court of the whereabouts of all collateral and to make no further transfers of any property of MaxAir's estate.

On December 18, 1991, Jones filed a response to the bankruptcy court's order of December 12, in which he claimed that at no time had he ever had possession of any of the assets formerly located at the MaxAir premises in Valdosta. He also alleged that these assets were the property of MaxAir Aircraft Corp. of Florida, Inc. ("MaxAir of Florida")[1] and were currently en route to the Bahamas.

On December 20, 1991, the bankruptcy court entered an order rescheduling the contempt hearing for January 9, 1992. In this order, the court noted that Jones' response of December 18 did not appear to comply with the court's order of December 12. The court then directed Jones and MaxAir to appear on January 9, 1992, and to show cause as to why they should not be held in contempt.

On January 9, 1992, the bankruptcy court held the contempt hearing. Jones failed to appear, claiming that he was unable to do so as a result of a subpoena issued by the Middle District of Florida. Jones' counsel consented to proceed with the hearing.

After examining the evidence and hearing all testimony, the bankruptcy court made the following findings of fact:

1. MaxAir of Florida is a corporation owned by Debra Jones (Jones' wife) that was formed prior to MaxAir of Georgia. According to respondents, MaxAir of Georgia was formed to increase the production capacity of MaxAir aircraft. According to CBC, MaxAir of Georgia purchased the assets of MaxAir of Florida after the formation of MaxAir of Georgia, and this purchase was a condition of CBC's loan to MaxAir of Georgia. Apparently, Jones now contends that this purchase never took place and that the assets still belong to MaxAir of Florida. The issue of true ownership of the assets is not before the court.

1. That approximately seven to eight days prior to the hearing of November 27, 1991 on CBC's motion to lift the automatic stay, the two largest pieces of collateral were removed from the Max-Air premises in Valdosta.

2. That during the two days preceding the automatic stay hearing, Jones refused to allow CBC access to the Max-Air premises to inspect the collateral and that Jones' refusal amounted to a veiled threat.

3. That beginning on the day before the automatic stay hearing, most equipment and inventory was removed from the MaxAir premises.

4. That Jones' wife, mother, and son, and various MaxAir employees participated in the removal of the equipment and inventory and that Jones was directly responsible for this removal.

5. That Jones failed to account for the collateral in violation of the court's order of December 12, 1991.

6. That Jones had no legal excuse for failing to appear at the January 9, 1992 hearing and therefore violated the court's order of December 20, 1991.

Based upon these factual findings, the bankruptcy court found MaxAir and Jones to be in willful contempt of court of the cash collateral order of September 17, 1991, the collateral accounting order of December 12, 1991, and the show cause order of December 20. The court then issued a written order on January 10, 1992, stating the sanctions imposed. First, MaxAir and Jones are liable for attorney fees and costs, to be assessed at a future hearing. Second, Jones is to be incarcerated until he purges himself of the contempt in one of the following ways:

1. By returning all equipment and inventory pledged to CBC as collateral to the MaxAir premises in Valdosta, Georgia, by making an accounting of all accounts receivable and all collateral proceeds, and by specifically returning two plastic injection molding machines to the MaxAir premises;

2. By otherwise purging himself of the contempt as determined by court order; or

3. By payment in full of all principal and interest due to CBC.

A copy of this order is attached as Exhibit 1. The order states that it does not become effective until de novo review by this court under rules 9020 and 9033.

This court, after conducting a de novo review of the record, does not differ with the bankruptcy court's findings of fact. The testimony is undisputed that Jones' family and MaxAir employees removed CBC's collateral from the MaxAir premises in Valdosta before CBC could obtain a writ of possession order. It is obvious that Jones has influence over his family and, as MaxAir's chief operating officer, over MaxAir employees to persuade them to remove the equipment.

Moreover, there is uncontroverted testimony that on the date of the hearing to lift the automatic stay, an attorney overheard Donald Jones say to his attorney that "he would take his stuff and open up shop somewhere else." (Transcript of Hearing of January 9, 1992, at 88.) This evidence, though circumstantial, shows that Jones was directly responsible for the removal of CBC's collateral from the MaxAir premises and that he has the power to see that the collateral is returned.

In addition, it is undisputed that Jones violated the cash collateral order when he refused to allow CBC access to the MaxAir premises to inspect the collateral. CBC's right to inspection is clearly stated in the bankruptcy court's order of September 17, 1991. Because Jones attended the hearing at which this order was entered and was represented by counsel, there is no merit to his contention that he either did not receive the order or did not understand its terms.

Furthermore, Jones failed to comply with the bankruptcy court's order of December 12, 1991, in which the court ordered Jones to provide an accounting to the court concerning CBC's collateral and to specifically include detailed information as to the location of the collateral. Jones' response of December 18 is not adequate.

Finally, there is no legal excuse for Jones' failure to appear at the hearing on January 9, 1992. It is undisputed that he was under subpoena to the Middle District of Florida during that week. However, the Florida court was not in session on January 9. Moreover, another witness under subpoena in Florida *did* appear to testify in Georgia on January 9. Thus, Jones could have made arrangements to appear in Georgia, and his failure to even attempt to do so is unjustified.

Hence, after a de novo review under Bankruptcy Rules 9020 and 9033, this court agrees with the bankruptcy courts' findings of fact and accepts them in toto.

## DISCUSSION

■ Respondents Jones and MaxAir have filed four main objections to the bankruptcy court's contempt order of January 10, 1992. First, respondents contend that the bankruptcy court failed to comply with the procedure set forth in Bankruptcy Rule 9020(b) for contempt hearings. Rule 9020(b) applied to contempt committed outside the presence of the bankruptcy judge and states as follows:

(b) **Other contempt**

Contempt committed in a case or proceeding pending before a bankruptcy judge except when determined as provided in subdivision (a) of this rule, may be determined by the bankruptcy judge only after a hearing on notice. The notice shall be in writing, shall state the essential facts constituting the contempt charged and describe the contempt as criminal or civil and shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense.. The notice may be given on the court's own initiative or on application of the United States attorney or by an attorney appointed by the court for that purpose....

Respondents point to several technical deficiencies in the written notice of the contempt hearing scheduled for December 12, 1991. This notice was filed by CBC on December 6, 1991, and states as follows:

PLEASE TAKE NOTICE that a hearing on the Motion for Contempt and Motion for Change of Venue in the above referenced case has been scheduled to be heard on December 12, 1991 at 9:00 o'clock a.m. at the Federal Courthouse and Post Office Building in Thomasville, Georgia.

Respondents contend that this notice is insufficient in several ways. First, they contend that the notice does not indicate whether the contempt is civil or criminal in nature. This argument has no merit because the notice incorporates CBC's motion for contempt by reference, which is clearly civil in nature.

Respondents also allege that they did not receive the notice until December 9, 1991, and, therefore, they only had three days in which to prepare for the hearing on December 12, 1991. They contend that three days were not adequate to prepare a defense since respondents and counsel reside at least four hours from the courthouse in Thomasville. However, the court notes that counsel for CBC was directed by the bankruptcy court on December 5, 1991, to notify respondents of the hearing. Therefore, respondents had more than enough time in which to prepare a defense. Furthermore, since the December 12, 1991 hearing was ultimately continued due to the illness of Jones' counsel, respondents did not even need to provide a defense at the hearing. Therefore, respondents' arguments concerning the notice of the hearing held on December 12, 1991 have no merit.

However, respondents also challenge the bankruptcy court's show cause order of December 20, 1991, as insufficient notice of the hearing held on January 9, 1992. They again contend that the notice fails to specify the contempt as civil or criminal contempt. Respondents were well aware of the nature of the contempt proceedings by December 20, 1991. Thus, this argument has no merit.

Respondents also contend that because the time period between the notice of December 20 and the hearing of January 9 was a holiday period, they did not have

adequate time in which to prepare a defense. This argument clearly has no merit.

In respondents' second objection to the bankruptcy court's contempt order, they claim that the bankruptcy court erred when it failed to continue the hearing of January 9, 1992, despite Jones' inability to appear due to a subpoena from the Middle District of Florida. The court has previously discussed this issue and found that Jones had no excuse for his failure to appear at the hearing of January 9, 1992. Therefore, this objection has no merit.

In respondents' third objection to the bankruptcy court's contempt order, they contend that the bankruptcy court erred in finding that Jones was directly responsible for the removal of CBC's collateral from the MaxAir premises in Valdosta. Again, the court has already discussed this issue and found through a de novo review of the hearing that Jones was directly responsible for the removal of CBC's collateral. Thus, this objection has no merit.

Respondents' final objection challenges the power of the bankruptcy court to order incarceration for contempt. Jones claims that a bankruptcy court does not have the power to order incarceration for contempt because incarceration is a penalty for criminal contempt. Jones also claims that a criminal contempt sanction for incarceration requires a jury trial and that he was denied that right in these proceedings.

■ It is well established that bankruptcy courts have the authority to exercise civil contempt power. *In re Power Recovery Systems, Inc.*, 950 F.2d 798 (1st Cir. 1991); *In re Skinner*, 917 F.2d 444 (10th Cir.1990); *In re Walters*, 868 F.2d 665 (4th Cir.1989). This power is implied under 11 U.S.C. § 105(a), which states:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or imple-

ment court orders or rules, or to prevent an abuse of process.

Furthermore, Bankruptcy Rule 9020 expressly provides that "Contempt committed in a case or proceeding pending before a bankruptcy judge ... may be determined by the bankruptcy judge" so long as the determination is made at a hearing for which the party subject to sanctions receives sufficient notice. Bankruptcy Rule 9020(b).

This court has already determined that Jones received sufficient notice and a fair hearing. Moreover, the court has determined through a de novo review that Jones is in contempt of three orders of the bankruptcy court. Therefore, the only question remaining before the court is whether the bankruptcy court had the authority to order incarceration as a sanction for civil contempt.

Jones argues that the sanction of incarceration in this case really amounts to a punishment for criminal contempt and therefore the sanction is beyond the authority of the bankruptcy court. There is considerable controversy over the question of whether a bankruptcy court has criminal contempt power. *Compare In re Sequoia Auto Brokers, Ltd.*, 827 F.2d 1281 (9th Cir.1987) *with In re Miller*, 81 B.R. 669 (Bankr.M.D.Fla.1988).

■ However, it is unnecessary to determine whether the bankruptcy court has criminal contempt powers in this case because criminal contempt is not involved. Criminal contempt "serves to vindicate the dignity of the court." *In re Duggan*, 133 B.R. 671, 673 (Bankr.D.Mass.1991) (cites omitted). A federal court imposes a sanction for criminal contempt

> [A]s punishment for an act in contempt of its authority committed in or near its presence in obstruction of the administration of justice, or for an act committed outside of its presence in disobedience or resistance of its lawful order.

*Id.* Civil contempt, in contrast, "serves either to (1) compel or coerce obedience to a court order or (2) compensate parties for another's noncompliance with a court order." *Id.*

In this case, Jones violated three orders of the bankruptcy court. First, he refused to allow CBC to inspect the collateral and then directed the removal of the collateral from the MaxAir premises to an as yet unknown location. This conduct not only violated the cash collateral order of September 17, 1991, but also continues to thwart CBC's attempts to inspect and to repossess the collateral. Second, Jones continues to refuse to account for the whereabouts of the collateral in violation of the bankruptcy court's order of December 12, 1991. Finally, Jones failed to appear at the hearing on January 9, 1992, in violation of the bankruptcy court's order of December 20, 1991. As a result of this contempt, CBC has suffered great litigation expenses and has been denied the right to enforce its security interest in the collateral.

■ The bankruptcy court, to compensate CBC for its litigation expenses, ordered Jones and MaxAir to pay attorney fees and costs, to be determined at a future hearing. There is no question that this is an appropriate sanction for civil contempt. *In re Walters*, 868 F.2d 665, 670 (4th Cir. 1989); *In re Skinner*, 90 B.R. 470 (D.Utah 1988).

■ In addition, the court ordered Jones to be incarcerated until he either returned all collateral to the MaxAir premises or paid the principal and interest owed to CBC in full. This sanction is one for civil contempt because its purpose is to coerce Jones to comply with the orders of September 17, and December 12, 1991. Furthermore, in contrast to the fixed term of imprisonment that is characteristic of criminal contempt cases, *see In re Duggan*, 133 B.R. 671, 673 (Bankr.D.Mass.1991), Jones " 'carr[ies] the keys of [his] prison in [his] own pocket[ ]." *In re Brown*, 94 B.R. 526 (Bankr.N.D.Ill.1988) (quoting *Penfield Co. v. S.E.C.*, 330 U.S. 585, 67 S.Ct. 918, 91 L.Ed. 1117 (1947)). Jones can avoid imprisonment altogether by either returning the collateral to the MaxAir premises and permitting CBC to inspect or by paying MaxAir's debt in full. The Bankruptcy Court of the District of Massachusetts recently ordered the sanction of incarceration for civil contempt in *In re Duggan*, 133 B.R. 671 (Bankr.D.Mass.1991). In *Duggan*, the debtor refused to comply with an order requiring him to surrender numerous items of property to the Trustee. The court ordered the debtor to be incarcerated until he surrendered this property.

The court determined that incarceration was the only appropriate sanction available. The debtor had a history of failing to comply with court orders; therefore, there was no reason to expect that he would comply with a monetary sanction. Moreover, incarceration has a much stronger coercive effect than other sanctions; therefore, it was much more appropriate than other sanctions.

■ Like the debtor in *Duggan*, Jones has a history of not cooperating with the bankruptcy court's orders. Therefore, it is unlikely that he would comply with a sanction like monetary compensation. Incarceration is the only alternative for someone who requires strong coercive tactics. Hence, the bankruptcy court's sanction of incarceration for Jones' civil contempt was appropriate. ·

## CONCLUSION

In conclusion, the court accepts the bankruptcy court's findings of contempt in this matter as well as its sanctions of attorney fees and incarceration. However, the court MODIFIES the bankruptcy court's sanctions order of January 10, 1992 in the following manner:

(1) Paragraph (4) is stricken and replaced with the following:

> Donald Jones has ten days from the date of this order in which to purge himself of contempt through one of the methods stated by the court. If he fails to do so, he shall voluntarily surrender to the United States Marshals Service at the Federal Courthouse in Valdosta, Georgia on the tenth day. If he fails to voluntarily surrender, a warrant for his arrest shall issue on the eleventh day.

Accordingly, respondents' objections to the bankruptcy courts' contempt order are DE-

NIED, and the bankruptcy court's order of January 10, 1992, with the above modification, is ACCEPTED as the order of this court.

SO ORDERED.

EXHIBIT I

UNITED STATES BANKRUPTCY COURT

MIDDLE DISTRICT OF GEORGIA

VALDOSTA DIVISION

Case No. 91–70507–VAL

Chapter 11

In re Maxair Aircraft Corp., Inc., a Georgia corporation, Tax I.D. No. 58–1902655, Debtor

Commercial Banking Company, Movant

v.

Maxair Aircraft Corporation of Georgia, Inc., and Donald E. Jones, Respondents

ORDER FINDING RESPONDENTS IN CONTEMPT

The Motion of Commercial Banking Company for contempt against Maxair Aircraft Corporation of Georgia, Inc., the Debtor herein, and Donald E. Jones was heard by the court as noticed on December 12, 1991 and was continued and the hearing was concluded on January 9, 1992. The original motion asked the court to find the Respondents in contempt for violation of the court's order of September 17, 1991. The court's orders of December 12, 1991 and December 20, 1991 also ordered the Respondents to take certain actions and to show cause at the hearing on January 9, 1992 why they should not be found in contempt if they failed to comply with those orders. The court heard evidence and argument of counsel and announced Findings of Fact and Conclusions of Law from the bench as authorized by Bankruptcy Rule 7052. Based upon those Findings of Fact and Conclusions of Law, the court ORDERS as follows:

(1) The Respondents and each of them are found to be in willful contempt of court by willful failure to comply with the court's orders of September 17, 1991, December 12, 1991, and December 20, 1991.

(2) As a sanction for such contempt, the Respondent Donald E. Jones shall be incarcerated until he purges himself of the contempt by the following:

(a) Returning to the location formerly known as Maxair Aircraft Corporation of Georgia, Inc. or such other location in Lowndes County, Georgia as may be designated by Commercial Banking Company all equipment and inventory pledged by the Debtor to Commercial Banking Company.

(b) Making a full accounting of all accounts receivable of the Debtor, the proceeds thereof, and the proceeds of any equipment or inventory that cannot be returned.

(c) Specifically returning the two plastic injection moulding machines to the former location of Maxair Aircraft Corporation of Georgia, Inc. or such other Lowndes County, Georgia location as may be designated by Commercial Banking Company identified as "one Plastic Injection Moulding Machine BOY 503, Serial No. 52762 4900LL, with Dry Air Chopper Model 4000" and "one BOY 15 Plastic Enjection (sic) Moulding Machine."

(d) Otherwise purging himself of the contempt as determined by order of this court or the United States District Court.

(e) At the request of Respondents' counsel, the court will also permit purging of the contempt by payment in full of all principal and interest due to Commercial Banking Company by the Debtor and guaranteed by the Respondent Donald E. Jones.

(3) As a further sanction for the contempt, the court finds that damages including attorney fees and costs shall be assessed by the court against the Debtor and the Respondent Donald E. Jones, jointly and severally, after a hearing upon notice. Movant is directed to

schedule such a hearing once compliance with other portions of this court order by the Respondents has been concluded so that the full amount of any damages and attorney fees and costs may be ascertained.

(4) In carrying out this order, the United States Marshals and other officers of the United States are authorized to use whatever force is reasonably necessary in order to arrest and restrain Donald E. Jones and may do so at any hour of the day or night and on any day of the week.

(5) In compliance with Bankruptcy Rule 9020, the Clerk of this Court is directed to serve this order upon the Respondents and the order shall be fully effective ten days after service of the same. Service will be presumed to have been accomplished three days after mailing of the order by the Clerk. During the ten-day period after service of this order, the Respondents or either of them may file objections in the manner provided in Bankruptcy Rule 9033(b). In the event such objection are filed within that period of time, this order will not become effective until after a review of the order and objections by the District Judge. In the event no such objections are filed, this order will be final and shall be enforced after the expiration of ten days from the service of the order by the Clerk.

SO ORDERED this 10th day of January, 1992.

(s) John T. Laney, III
JOHN T. LANEY, III
UNITED STATES BANKRUPTCY JUDGE