In the Matter of Nancy
L. FAUST, Debtor.

Nancy L. Faust, Plaintiff,

v.

Texaco Refining And Marketing
Inc., and GC Services Limited
Partnership, Defendants.

Bankruptcy No. 94–30264 RFH.
Adversary No 96–3001.

United States Bankruptcy Court,
M.D. Georgia,
Athens Division.

April 3, 1998.

---

5. There is no issue as to the Plaintiffs' good faith.

Barry Gordon Irwin, Athens, GA, for Nancy L. Faust.

James P. Smith Macon, GA, for Texaco Refining and Marketing Inc.

Thomas E. McCarter, Atlanta, GA, for GC Services Limited Partnership.

## PROPOSED MEMORANDUM OPINION

ROBERT F. HERSHNER, Jr., Chief Judge.

Nancy L. Faust, Plaintiff, filed a complaint on January 2, 1996. GC Services Limited Partnership, Defendant, filed a response on February 1, 1996. Texaco Refining and Marketing Inc., Defendant, filed a response on February 1, 1996. The Court entered an order on July 8, 1996, allowing Plaintiff to amend her complaint. Texaco filed a response to the amended complaint on July 26, 1996. GC Services filed a response on July 26, 1996. GC Services' response also asserted a cross claim against Texaco. Texaco filed a response to the cross claim on August 7, 1996. This adversary proceeding came on for trial on July 15, 1997. The Court, having considered the evidence presented and the arguments of counsel, now publishes this proposed memorandum opinion.

## FINDINGS OF FACT

Texaco issued a credit card to Plaintiff. Plaintiff made several charges on the credit card. Texaco sent monthly statements directing Plaintiff to send her payments to P.O. Box 260001, Dallas, TX 75326–0999. This is a payment lockbox. Plaintiff made a number of payments to this address. The monthly statements directed Plaintiff to send inquiries to Texaco Refining and Market Team, Inc., P.O. Box 2000, Bellaire, Texas 77002–2000.

Plaintiff had financial problems and filed a petition under Chapter 7 of the Bankruptcy Code on March 29, 1994. In her bankruptcy schedules, Plaintiff listed, as unsecured, the obligation she owed to Texaco. Texaco was listed on Plaintiff's bankruptcy mailing matrix as follows: Texaco, P.O. Box 260001, Dallas, TX, 75326–0999. This was the same address to which Plaintiff sent her monthly payments. Texaco regularly receives bankruptcy notices at this address. Texaco concedes that a bankruptcy notice sent to this address is notice to Texaco. Bankruptcy notices received at the Dallas, Texas, address are sent by overnight mail to Texaco's representative responsible for handling bankruptcy notices. Plaintiff did not receive any monthly statements from Texaco after her statement with a closing date of April 7, 1994. Plaintiff's balance on that statement was $97.52.

The Court entered an order on July 21, 1994, discharging Plaintiff from all dischargeable debts. The Court sent a copy of the discharge order to Texaco at its Dallas, Texas, address.

Texaco referred Plaintiff's account to Credit Convertors, a debt collection agency. Credit Convertors sent Plaintiff a collection letter in August of 1994. Credit Convertors subsequently contacted Plaintiff by telephone. Plaintiff stated that she had filed for bankruptcy relief. Credit

Convertor ceased its collection actions and reported to Texaco that Plaintiff's obligation was not collectable.

Texaco then referred Plaintiff's account to GC Services, a debt collection agency. GC Services contacted Plaintiff by telephone. Plaintiff hung up without stating that she had filed for bankruptcy relief. GC Services sent Plaintiff a collection letter, which was dated August 22, 1995. The collection letter stated, in part, as follows:

> Dear Nancy L Faust:
>
> Your debt of $103.88 has been sent to us by TEXACO.
>
> We know how to collect debts.
>
> We WILL collect yours.
>
> We are the nation's largest private collection agency. We have collected millions of accounts for the nation's largest companies.
>
> We provide systems for the collection of delinquent taxes to both federal and state governments.
>
> We are not affiliated with or endorsed by our clients, private or governmental. We have handled every kind of account and heard every kind of EXCUSE. We WILL get results.
>
> We both know it is a serious matter when you fail to pay your debts.
>
> Face up to your obligation and send us your payment in full.
>
> Sam A. Marshall
>
> Delinquent Accounts Manager

"Sam A. Marshall" is an alias which GC Services used on collection letters until an account was assigned to a collection agent.

Plaintiff received the collection letter on August 25, 1995. Plaintiff sent the collection letter along with a handwritten note to her bankruptcy counsel, Mr. Barry Irwin, on August 29, 1995. Mr. Irwin sent a letter dated September 1, 1995 to "Sam A. Marshall," requesting verification of Plaintiff's debt and demanding that all communications with Plaintiff cease. Mr. Irwin's letter made no mention of Plaintiff's bankruptcy. GC Services ceased its collection actions.

The Court entered an order on November 13, 1995, reopening Plaintiff's case so that she could file this adversary proceeding. Texaco and GC Services, through its representatives, testified that they first became aware that Plaintiff had filed for bankruptcy relief when they were served with this adversary proceeding.

Plaintiff testified that she suffered emotional stress because of GC Services' collection letter. Plaintiff testified that she was worried and upset. Plaintiff testified that she did not have the funds to pay Texaco's account and thought her bankruptcy took care of her obligation. Plaintiff testified that she felt better after she talked with her attorney, Mr. Irwin. Plaintiff did not suffer any physical harm, sought no medical treatment, and did not suffer any long-term problems. Plaintiff presented no evidence that she suffered any out-of-pocket monetary damages.

### CONCLUSIONS OF LAW

Plaintiff contends that Texaco and GC Services violated the discharge injunction of the Bankruptcy Code and the Fair Debt Collection Practices Act. The Court will consider in turn each of Plaintiff's contentions.

In Count I of her complaint, Plaintiff contends that Texaco violated the discharge injunction by referring Plaintiff's account to two debt collection agencies. Plaintiff contends that GC Services violated the discharge injunction by sending a debt collection letter.

Section 524(a)(2) of the Bankruptcy Code provides:

## § 524. Effect of discharge

(a) A discharge in a case under this title—

. . . .

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived; and

11 U.S.C.A. § 524(a)(2) (West 1993).

■ A violation of the discharge injunction can be sanctioned through the court's inherent contempt powers of section 524 of the Bankruptcy Code or through the statutory contempt powers of section 105 of the Bankruptcy Code.[1] *Hardy v. United States (In re Hardy),* 97 F.3d 1384, 1388–90 (11th Cir.1996).

■ "[A creditor] may be sanctioned under the court's *inherent* contempt powers only if its actions in violating the discharge provisions were in bad faith. Bad faith conduct includes conduct that is vexatious, wanton or oppressive." *Hardy,* 97 F.3d at 1389 n. 3 (emphasis original). A court should exercise with caution its inherent contempt powers under section 524 and rely, when appropriate, on its statutory contempt powers under section 105. *See Hardy,* 97 F.3d at 1389.

■ A creditor may be sanctioned under the statutory contempt powers of section 105 if the creditor willfully violated the discharge injunction of section 524. A creditor willfully violated the discharge injunction if the creditor (1) knew that the discharge injunction was invoked, and (2) intended the actions which violated the injunction. If the court finds that the creditor received notice of the discharge in bankruptcy, then the debtor will have to prove only that the creditor intended the actions which violated the injunction. *Hardy,* 97 F.3d at 1390.

■ "A bankruptcy judge may charge a person with civil contempt in a proceeding pending before the bankruptcy court after notice and a hearing. Bankr.R. 9020." *In re Stewart,* Case No. 5:95–CV–235–4(DF) p. 3 (M.D. Ga. June 8, 1995), *aff'd on other grounds,* Case No. 95–8760 (11th Cir. May 3, 1996). *See also Commercial Banking Co. v. Jones (In re Maxair Aircraft Corp. of Georgia, Inc.),* 148 B.R. 353, 358 (M.D.Ga.1992)(Owens, J.).

■ Texaco concedes that a creditor violates the discharge injunction by referring a prepetition obligation to a debt collection agency. Texaco argues that it did not have actual notice of Plaintiff's bankruptcy filing and that Plaintiff's damages, if any, were minimal. *Texaco's post-trial brief,* p. 3 (filed August 14, 1997).

The Court is persuaded that Texaco knew that Plaintiff had filed for bankruptcy relief. The Court's notice of Plaintiff's bankruptcy filing was sent to Texaco's address in Dallas, Texas. Texaco regularly received bankruptcy notices at this address. Texaco concedes that a bankruptcy notice sent to this address is notice to Texaco. Plaintiff did not receive any further monthly statements from Texaco. The Court's discharge order was sent to Texaco's address in Dallas, Texas. The Court can only conclude that Texaco received the Court's bankruptcy notices. The Court is persuaded that Texaco, after having notice of Plaintiff's bankruptcy filing, referred Plaintiff's account to two debt collection agencies.

The Court is persuaded that Texaco willfully violated the discharge injunction. The Court is persuaded that Texaco was

---

**1.** 11 U.S.C.A. § 105 (West 1993 & Supp. 1997).

careless and negligent. The Court is persuaded that Texaco should be sanctioned through the Court's statutory contempt powers rather than through the Court's inherent contempt powers.

Plaintiff also argues that GC Services violated the discharge injunction by sending a collection letter. It is clear that GC Services intended to send the collection letter. The Court is not persuaded, however, that GC Services knew of Plaintiff's bankruptcy filing or the Court's discharge order. There is no evidence that Texaco told GC Services that Plaintiff had filed for bankruptcy relief. "An agent [GC Services] cannot be imputed with information which his principal [Texaco] has failed to give him. *S.O.G.—San Ore— Gardner v. Missouri Pacific R.R. Co.*, 658 F.2d 562, 567 (8th Cir.1981)." *Waswick v. Stutsman County Bank (In re Waswick)*, 212 B.R. 350, 353 (Bankr.D.N.D.1997). When GC Services contacted Plaintiff by telephone, Plaintiff hung up without stating that she had filed for bankruptcy relief. GC Services ceased its collection actions upon receipt of Mr. Irwin's letter disputing Plaintiff's debt. The Court is not persuaded that GC Services willfully violated the discharge injunction. The Court is not persuaded that Plaintiff is entitled to recover any damages from GC Services under Count I.

The Court now turns to consider the damages that Plaintiff may recover from Texaco for its violation of the discharge injunction. In *Jove Engineering, Inc. v. Internal Revenue Service*,[2] the IRS willfully violated the automatic stay of the Bankruptcy Code. In considering the sanctions available under section 105, the Eleventh Circuit Court of Appeals stated:

*D. Sanctions Under § 105*

The purpose of civil contempt sanctions is to (1) compensate the complainant for losses and expenses it incurred because of the contemptuous act, and (2) coerce the contemnor into complying with the court order. In this case, Jove seeks (1) actual out-of-pocket expenses it incurred in protecting its automatic stay rights and (2) severe monetary sanctions to induce IRS to cease violating the stay.

*1. Coercive Sanctions*—The district court concluded that "the circumstances do not call for punishment" [even] *if* there were willful violations. If the elements of contempt exist subject to the statutory powers of the enforcing court under 11 U.S.C. § 105, the character of the circumstances is more properly a function of the assessment of sanctions than of the determination whether there was a violation, and therefore a contempt. Sanctions imposed for civil contempt to coerce compliance "cannot be any greater than necessary to ensure such compliance" and may not be so excessive as to be punitive in nature. (Emphasis added).

92 F.3d 1539, 1557–58 (11th Cir.1996).

The court continued, stating:

Sanctions are coercive if they serve the complainant rather than vindicate some public interest. Sanctions are also coercive if the contemnor has the ability to control the extent of the sanction.

92 F.3d at 1558.

The court also stated:

*2. Attorney Fees*—If IRS violates the automatic stay, courts awarding attorney fees must consider provisions from three statutory schemes: the Bankruptcy Code, the Equal Access to Justice Act ("EAJA"), and the Internal Revenue Code....

---

2.  92 F.3d 1539 (11th Cir.1996).

Regarding automatic stay violations, the Bankruptcy Code provides two relevant, independent sources for awarding attorney fees, § 105(a) (discretionary) and § 362(h) (mandatory), . . .

92 F.3d at 1559.

■ Plaintiff has not demonstrated any out-of-pocket monetary damages. Plaintiff testified that she suffered emotional stress because of the collection actions by GC Services. Plaintiff testified that she was worried and upset for a few days. She suffered no long-term problems and sought no medical treatment. Texaco set in motion the collection process by referring Plaintiff's account to GC Services. The Court is persuaded that Texaco was partially responsible for Plaintiff's emotional stress. The Court is persuaded that Plaintiff suffered some emotional stress. The Court is persuaded that Plaintiff should recover from Texaco the sum of $1,000 for her emotional stress.

■ The Court will consider an appropriate award of attorney's fees and costs should Plaintiff's attorney wish to file an affidavit itemizing the attorney's fees and costs within fourteen days of this memorandum opinion. After the Court receives and reviews the affidavit, the Court will make an appropriate award.

■ The Court may also impose monetary sanctions to coerce a creditor to cease violating the discharge injunction. *Jove,* 92 F.3d at 1557–58. "Creditors are obligated to maintain procedures to ensure that they do not violate section 524, and may be held liable for damages and attorney's fees if they do not." 4 *Collier on Bankruptcy* ¶ 524.02[2][b] p. 524–16 (15th revised ed.1997).

■ Texaco's representative, Mr. James Shy, testified about the procedures that Texaco has in place to ensure that bankruptcy notices are properly handled so that collection actions are stopped. Mr. Shy testified that Texaco has some 7,000,000 customer accounts and receives hundreds of bankruptcy notices each day. The Court notes that this adversary proceeding is the first time the Court has been called upon to sanction Texaco for violating the automatic stay or discharge injunction. The Court, therefore, is persuaded that further sanctions are not needed to coerce Texaco to comply with the discharge injunction.

Texaco demands that this adversary proceeding be governed by Rules 9020(c) and 9033 of the Federal Rules of Bankruptcy Procedure. The Court's order, as to Count I, therefore shall be effective as provided for in these Rules.

■ In Count II of her complaint, Plaintiff contends that GC Services violated the Fair Debt Collection Practices Act (hereinafter the "FDCPA"). Plaintiff also contends that Texaco is responsible for GC Services' violation under a theory of respondeat superior.

In her complaint, Plaintiff states that Count II is a non-core proceeding, but consents to this Court's entering a final order. *Plaintiff's Amended Complaint,* ¶ 16 (filed July 2, 1996). Texaco and GC Services do not consent to this Court entering a final order as to Count II. *GC Services' Answer,* ¶ 3 (filed July 26, 1996); *Letter from counsel for GC Services to the Court* (November 26, 1997); *Texaco's Answer,* ¶ 15 (filed July 26, 1996); *Letter from counsel for Texaco to the Court* (November 26, 1997).

The Court, therefore, shall submit proposed findings of fact and conclusions of law to the district court. The district court will enter the final order or judgment as to Count II of Plaintiff's complaint. 28 U.S.C.A. § 157(c) (West 1993); Fed. R. Bankr.P. 9033.

"The thrust of the Fair Debt Collection Practices Act is prevention of harassment and abuse as well as false, deceptive or misleading practices. It clearly falls into a traditional tort area analogous to a number of traditional torts. The relief sought is money damages—the traditional form of relief offered in the courts of law. Indeed, equitable relief is not available to an individual under the civil liability section of the Act." *Sibley v. Fulton DeKalb Collection Service*, 677 F.2d 830, 834 (11th Cir.1982).

"The FDCPA is a strict liability statute, and therefore, does not require a showing of intentional conduct on the part of a debt collector. See e.g., *Russell v. Equifax A.R.S.*, 74 F.3d 30, 33 (2d Cir.1996). Further, a single violation of the FDCPA is sufficient to establish civil liability. *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62 (2d Cir.1993)." *Cavallaro v. Law Office of Shapiro & Kreisman*, 933 F.Supp. 1148, 1153 (E.D.N.Y.1996).

Plaintiff contends that the collection letter sent by GC Services violated section 1692e(1) of the FDCPA[3] by representing or implying that GC Services had been "vouched for" by the federal and state governments. Section 1692e(1) provides:

**§ 1692e. False or misleading representations**

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1) The false representation or implication that the debt collector is vouched for, bonded by, or affiliated with the United States or any State, including the use of any badge, uniform, or facsimile thereof.

15 U.S.C.A. § 1692e(1) (West 1982).

The Court, in accessing the impact of an alleged violation of section 1692e(1) must "look [ ] to the tendency of language to mislead the least sophisticated recipients of a debt collector's letters and telephone calls...." *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1175 (11th Cir.1985) (adopting standard of "least sophisticated consumer").

GC Services' collection letter states, in part: "We provide systems for the collection of delinquent taxes to both federal and state governments. We are not affiliated with or endorsed by our clients, private or governmental."

In *Gammon v. GC Services Limited Partnership*,[4] the debt collection agency sent a collection letter, which stated, in part: "You should know that we are an experienced collection agency. *We provided the systems used by a major branch of the federal government and various state governments to collect delinquent taxes.*" 27 F.3d at 1255 (emphasis original).

The Sixth Circuit concluded that an unsophisticated consumer could interpret the statement "to imply that those governmental bodies vouch for or are affiliated with GC Services." 27 F.3d at 1257. The circuit court stated:

The language in the collection letter appears to be cleverly drafted in order to insinuate what obviously cannot be stated directly. It is difficult to imagine what end GC Services intended to accomplish with its statement other than the intimidation of unsophisticated consumers with the power of having the tax collecting units of the federal and state governments in its corner, or at least at

---

3. 15 U.S.C.A. § 1692e(1) (West 1982).

4. 27 F.3d 1254 (7th Cir.1994).

its disposal. It would seem that GC Services had no reason to mention specifically its state and federal government clients in the letter except to leave the impression that it is closely involved with these governmental entities, and can use the "systems" of the IRS and state tax authorities to collect delinquent debts. And although the subjective intent of the debt collector is not dispositive of a claim under section 1692e(1) of the FDCPA, the intended effect of the statement reinforces our view as to the actual effect it is likely to have upon the unsophisticated debtor.

. . . .

GC Services appears to have implied that its development of governmental "systems" for the collection of delinquent taxes would enable it to cause "problems" for the delinquent debtor. An unsophisticated consumer could reasonably believe that his future "problems" would be with "a major branch of the federal government" because of GC Services' development of the government's "systems." GC Services' letter, by which it sought to collect a delinquent account of Jeffrey Gammon may have violated the provisions of section 1692e by falsely implying that it had an affiliation with the United States or various states.

27 F.3d at 1258.

The Court is persuaded that a "least sophisticated consumer" could be misled and interpret GC Services' collection letter to imply that the federal and state governments vouch for GC Services. GC Services asserts that it, in fact, provides collection systems to the government. GC Services argues that the collection letter states that it is not affiliated with or endorsed by the government. GC Services, however, offered no explanation as to why it uses the language at issue. The Court is persuaded that GE Services intended to imply that it was closely connected with the government. The Court is persuaded that the statement was intended to intimidate recipients. The Court is persuaded that the collection letter violated section 1692e(1) of the FDCPA.

Plaintiff also contends the collection letter violated other sections of the FDCPA. The Court, having determined that the letter violated one section, need not determine whether the letter also violated other sections. *See Harper v. Better Business Services, Inc.*, 961 F.2d 1561 (11th Cir. 1992) (FDCPA provides for $1,000 statutory damages per civil action, not per violation of the FDCPA); *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62 (2d Cir.1993) (a single violation of section 1692e is sufficient to establish civil liability under the FDCPA).

The Court now turns to consider the damages that Plaintiff may recover. Section 1692k of the FDCPA [5] provides:

**§ 1692k. Civil liability**

**Amount of damages**

(a) Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—

(1) any actual damage sustained by such person as a result of such failure;

(2)(A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000; or

. . . .

(3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together

---

5. 15 U.S.C.A. § 1692k (Est. 1982).

with a reasonable attorney's fee as determined by the court. On a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs.

**Factors considered by court**

**(b)** In determining the amount of liability in any action under subsection (a) of this section, the court shall consider, among other avant factors—

(1) in any individual action under subsection (a)(2)(A) of this section, the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional; or

15 U.S.C.A. § 1692k (West 1982).

■ Plaintiff has not demonstrated any out-of-pocket monetary damages. She did not suffer any physical harm, sought no medical treatment, and did not suffer any long-term problems. Plaintiff testified that she was worried, upset, and suffered emotional distress because of the collection letter. She felt better after she talked with her attorney. The Court is persuaded that Plaintiff suffered some emotional stress. GC Services intended to send the collection letter which caused Plaintiff's emotional stress. The Court is persuaded that Plaintiff should recover from GC Services the sum of $500 under section 1692k(a)(1) for her emotional stress.

The Court is persuaded that Plaintiff should recover statutory damages of $1,000 under section 1692k(a)(2)(A). GC Services intended to send a collection letter which implied that it was closely connected with the federal and state governments. GC Services offered no explanation as to why it used the language at issue. The Court is persuaded that the statement was intended to intimidate recipients and that GC Services' conduct warrants the maximum statutory award.

Plaintiff has shown that GC Services violated the FDCPA. The Court will consider an appropriate award of attorney's fees and costs should Plaintiff's attorney wish to file an affidavit itemizing the attorney's fees and costs within fourteen days of this memorandum opinion. After the Court receives and reviews the affidavit, the Court will make an appropriate award. *See Hollis v. Roberts,* 984 F.2d 1159 (11th Cir.1993) (describing calculation of award of attorney's fees under FDCPA).

Plaintiff, in her complaint, contends that Texaco is responsible for GC Services' violation under a theory of respondeat superior. Plaintiff seeks to recover damages from Texaco for GC Services' violation of the FDCPA. The Court is not persuaded that Texaco is responsible for the violations of GC Services. *See Wadlington v. Credit Acceptance Corp.,* 76 F.3d 103 (6th Cir.1996) (creditor not vicariously liable for FDCPA violation by debt collector).

■ GC Services filed a cross claim, seeking indemnification from Texaco should the Court determine that GC Services was liable to Plaintiff. The Court has determined that GC Services did not willfully violate the discharge injunction. The Court has determined that Plaintiff is not entitled to recover any damages from GC Services under Count I of the complaint.

The Court, however, has determined that GC Services violated the Fair Debt Collection Practices Act. The Court has awarded Plaintiff damages for the violation.

The Court is persuaded that GC Services is not entitled to indemnification from Texaco. GC Services and Texaco

entered into an Agreement for the Collection of Unpaid Accounts on February 26, 1993. *Texaco's Trial Exhibit No. 3*. The agreement provides that GC Services will comply with the Fair Debt Collection Practices Act and all other applicable laws. *Section 23.* GC Services agreed to indemnify and defend Texaco from any damages and claims caused by GC Services' violation of any federal or state law or statute. *Section 8.* GC Services was to exercise sole and exclusive authority and control over the method and manner of collecting credit card accounts. *Section 7.*

The Court is persuaded that Texaco is not obligated to indemnify GC Services for GC Services' violation of the Fair Debt Collection Practices Act.

A proposed order in accordance with this proposed memorandum opinion will be entered this date.